# IN THE SUPREME COURT OF TEXAS

═══════════

No. 13-0136

═══════════

NABORS WELL SERVICES, LTD. F/K/A POOL COMPANY TEXAS, LTD.
AND LAURO BERNAL GARCIA,
PETITIONERS,

v.

ASUNCION ROMERO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE
ESTATE OF AYDEE ROMERO, DECEASED, AND AS NEXT FRIEND OF
EDGAR ROMERO AND SAUL ROMERO; ESPERANZA SOTO, INDIVIDUALLY
AND AS NEXT FRIEND OF ESPERANZA SOTO, GUADALUPE SOTO,
MARIA ELENA SOTO; AND MARTIN SOTO,
RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued October 9, 2014**

JUSTICE BROWN delivered the opinion of the Court.

For more than forty years evidence of a plaintiff's failure to use a seat belt has been inadmissible in car-accident cases. That rule, which this Court first announced in 1974, offered plaintiffs safe harbor from the harshness of an all-or-nothing scheme that barred recovery for even the slightest contributory negligence. Moreover, the Court reasoned that although a plaintiff's failure

to use a seat belt may exacerbate his injuries, it cannot *cause* a car accident, and therefore should not affect a plaintiff's recovery.

In 1985 the Legislature jumped in to statutorily prohibit evidence of use or nonuse of seat belts in all civil cases. It repealed that law in 2003, leaving our rule to again stand alone. But much has changed in the past four decades. The Legislature has overhauled Texas's system for apportioning fault in negligence cases—a plaintiff's negligence can now be apportioned alongside a defendant's without entirely barring the plaintiff's recovery. And unlike in 1974, seat belts are now required by law and have become an unquestioned part of daily life for the vast majority of drivers and passengers.

These changes have rendered our prohibition on seat-belt evidence an anachronism. The rule may have been appropriate in its time, but today it is a vestige of a bygone legal system and an oddity in light of modern societal norms. Today we overrule it and hold that relevant evidence of use or nonuse of seat belts is admissible for the purpose of apportioning responsibility in civil lawsuits.

**I**

This case arises from a collision between a Nabors Well Services, Ltd. transport truck and a Chevrolet Suburban with eight occupants—three adults and five children. Both vehicles were traveling southbound on two-lane U.S. Highway 285 in rural West Texas. As the transport truck slowed to make a left turn into a Nabors facility, Martin Soto, the Suburban's driver, pulled into the opposing traffic lane and attempted to pass the transport truck. As Soto passed, the transport truck began its left turn and clipped the Suburban, which careened off the highway and rolled multiple

2

times. The evidence is disputed as to whether the transport truck used a turn signal and for how long and whether Soto could have passed the transport truck within the legal passing zone.

Aydee Romero, an adult passenger, was killed in the accident. Martin, his wife Esperanza Soto, and all five children—Esperanza, Guadalupe, and Marielena Soto, and Edgar and Saul Romero—suffered injuries. There is conflicting evidence as to which occupants were belted and which were ejected from the Suburban. A responding state trooper wrote in his report that all occupants were unrestrained except Marielena and the elder Esperanza. But both of them, along with the younger Esperanza, testified they did not use seat belts, while Martin and Guadalupe testified they wore theirs. Guadalupe testified all occupants were ejected except for Martin and Edgar, but Edgar testified he was ejected. And an EMS report stated one of the family members reported at the scene that seven of eight occupants were ejected.

The Soto and Romero families sued Nabors and its truck driver. At trial, Nabors sought to offer expert testimony from a biomechanical engineer, James Funk, Ph.D., that seven of the eight Suburban occupants were unbelted (all except Martin, the driver), that five of those seven were ejected from the vehicle, and that the failure to use seat belts caused the passengers' injuries and the one fatality. Nabors also hoped to introduce evidence of a citation issued to Soto for driving without properly restraining the child passengers as well as testimony from the plaintiffs as to who was unbelted and who was ejected.

Following our precedent in *Carnation Co. v. Wong*, 516 S.W.2d 116 (Tex. 1974), the trial court excluded all evidence of nonuse of seat belts. Additionally, the trial court separately excluded portions of Dr. Funk's testimony on *Robinson* grounds, specifically, that Dr. Funk was unqualified

to opine that the failure to use seat belts caused the unbelted occupants' injuries. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). The trial court emphasized that even if it had allowed seat-belt evidence, it would have excluded Dr. Funk's injury-causation testimony under *Robinson*. The jury found Nabors 51% and Soto 49% responsible for the accident, and awarded the Soto and Romero families collectively just over $2.3 million.

The court of appeals affirmed the trial court's judgment based solely on the *Carnation* prohibition on seat-belt evidence. The court of appeals did not separately consider whether the trial court properly excluded Dr. Funk's injury-causation testimony under *Robinson*. We granted review to consider the current viability of *Carnation* in light of the Legislature's repeal of its statutory ban on seat-belt evidence.

**II**

**A**

Texas's earliest cases on the admissibility of seat-belt evidence first appeared in the late 1960s. They culminated in this Court's 1974 decision in *Carnation* to severely limit admissibility of seat-belt evidence. The context within which these cases arose is instructive. First, there was no law requiring seat-belt use; in fact, a federal mandate that seat belts be installed as standard equipment on all new passenger vehicles was barely in its infancy. Brian T. Bagley, *The Seat Belt Defense in Texas*, 35 ST. MARY'S L.J. 707, 717 (2004). And second, Texas courts operated under an unforgiving all-or-nothing rule in negligence cases that entirely barred a plaintiff from recovery if the plaintiff himself was negligent in any way. *Parrot v. Garcia*, 436 S.W.2d 897, 901 (Tex. 1969).

The first court of appeals to address the issue was quick to point out that no statute required seat-belt use and no Texas authority supported a common-law duty to use seat belts. *See Tom Brown Drilling Co. v. Nieman*, 418 S.W.2d 337, 340–41 (Tex. Civ. App.—Eastland 1967, writ ref'd n.r.e.). And in lieu of forging a new path, some courts of appeals were able to dispose of the issue on the ground that defendants had no evidence the failure to use seat belts caused the plaintiffs' injuries. *See United Furniture & Appliance Co. v. Johnson*, 456 S.W.2d 455, 459 (Tex. Civ. App.—Tyler 1970, writ dism'd); *Nieman*, 418 S.W.2d at 341. Others grappled with the evidentiary difficulties of admitting seat-belt evidence. *See Red Top Taxi Co. v. Snow*, 452 S.W.2d 772, 779 (Tex. Civ. App.—Corpus Christi 1970, no writ) (holding evidence of nonuse of seat belts irrelevant to "the liability issues involving the [plaintiff's] alleged contributory negligence"); *Sonnier v. Ramsey*, 424 S.W.2d 684, 689 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (declining to decide whether a common-law duty to use a seat belt exists, but suggesting if so it "should be considered in connection with damages rather than liability"). At least one court seized the opportunity to declare there was no common-law duty to use a seat belt and that the omission was not actionable negligence because the plaintiff could not reasonably foresee the effects of a failure to use a seat belt. *See Quinius v. Estrada*, 448 S.W.2d 552, 554 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.). By the time this Court weighed in, all courts of appeals that reached the issue had either decided a failure to use seat belts was not actionable negligence or left the issue undecided. None supported admitting seat-belt evidence with the aim of reducing or negating a plaintiff's recovery.

This Court first encountered the issue in *Kerby v. Abilene Christian College*, in which the driver of a linen truck, Kerby, was ejected through the open sliding door of his truck after colliding

5

with an ACC bus. 503 S.W.2d 526, 526 (Tex. 1973). The jury found Kerby negligent and 35% responsible for his injuries. *Id.* at 527. The trial court accordingly reduced Kerby's recovery by 35%, but the court of appeals tossed his award entirely because under the law at the time his contributory negligence barred any recovery whatsoever. *Id.*

This Court reversed both lower courts and restored Kerby's recovery in full, reasoning that "[c]ontributory negligence must have the causal connection with the accident that but for the conduct the accident would not have happened." *Id.* at 528. Accordingly, "negligence that merely increases or adds to the extent of the loss or injury occasioned by another's negligence is not such contributory negligence as will defeat recovery." *Id.* In so holding, the Court drew "a sharp distinction between negligence contributing to the accident and negligence contributing to the damages sustained." *Id.* The Court further likened the facts of *Kerby* to earlier cases in which courts of appeals held the failure to use a seat belt was not "actionable negligence" or "contributory negligence such that would bar recovery," and underscored the "conceptual difficulty of applying the mitigation[-]of[-]damages concept to Plaintiff's conduct antedating the negligence of the Defendant." *Id.* In so doing, the Court declared seat-belt evidence incompatible with the only two legal doctrines—contributory negligence and failure to mitigate damages—that arguably could accommodate it.

A year later in *Carnation v. Wong*, the jury found plaintiffs involved in a car accident negligent for failing to use seat belts. 516 S.W.2d at 116. The jury attributed 50% of the fault for the husband's injuries against him and 70% of the fault for the wife's injuries against her. *Id.* The trial court reduced the Wongs' awards correspondingly, but the court of appeals overturned those reductions. *Id.* Finding no reversible error, this Court refused to grant the writ of error in *Carnation*,

6

but accompanied that refusal with an opinion correcting the court of appeals' too-expansive reading of *Kerby*. *Id.* Contrary to the court of appeals' interpretation, the *Kerby* Court did not rule there was no common-law duty to use seat belts. And the *Carnation* Court stopped short of that holding as well. Instead, the Court focused on the difficulty of applying the "various legal theories" supporting admissibility of seat-belt evidence in the available legal framework. *Id.* The Court rejected out of hand "those cases barring completely plaintiff's recovery based on contributory negligence," noting only that "our courts have not followed such an approach." *Id.* (citations omitted). The Court also acknowledged that other jurisdictions had considered seat-belt evidence under mitigation-of-damages and apportionment-of-damages theories, but could "find no reported appellate decision where a court has actually relied upon either of these two theories to uphold definitively a trial court's reduction of plaintiff's recovery from defendant based on the plaintiff's failure to wear available seat belts." *Id.* at 117 (citations omitted). With that, the Court announced: "We now hold that . . . persons whose negligence did not contribute to an automobile accident should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts." *Id.*

## B

About a decade after *Carnation*, the federal government began to push seat-belt-use initiatives that would give rise to the first seat-belt laws in Texas and in several other states. In 1984, the National Highway Traffic Safety Administration issued a regulation requiring all passenger vehicles beginning with the 1990 model year to include passive-restraint systems unless states constituting two-thirds of the nation's population adopted mandatory seat-belt laws. *See* Federal

7

Motor Vehicle Safety Standard; Occupant Crash Protection, 49 Fed. Reg. 28,962-01 (July 17, 1984) (codified as amended at 49 C.F.R. § 571.208). The Texas Legislature, along with many others, responded, and in 1985 for the first time made it a criminal offense for anyone fifteen years or older to ride in a front seat unbelted, and further placed on drivers a responsibility to properly restrain children under fifteen riding in a front seat. Act of June 15, 1985, 69th Leg., R.S., ch. 804, § 1, sec. 107C, 1985 Tex. Gen. Laws 2846, 2846–47, *repealed by* Act of May 23, 1995, 74th Leg, R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1870–71. The new law further provided that: "Use or nonuse of a safety belt is not admissible evidence in a civil trial." *Id.* This outright prohibition of seat-belt evidence, seemingly for any purpose, was broader than the rule adopted in *Carnation*, which simply held seat-belt evidence was inadmissible to reduce a plaintiff's recovery. *See Carnation*, 516 S.W.2d at 117. And with that prohibition, *Carnation* was mothballed—not stricken from the books but preempted by a stricter statutory prohibition.

Texas's seat-belt law has expanded in its applicability over the years. In 2004, when the car accident at issue in this case occurred, Texas law required a driver to properly restrain most children riding anywhere in the vehicle. Act of June 14, 2001, 77th Leg., R.S., ch. 910, § 2, 2001 Tex. Gen. Laws 1821, 1821–22 (amended 2005) (current version at TEX. TRANSP. CODE § 545.413(b)). Today, anyone fifteen years or older in any seat is required to buckle up, and drivers have a responsibility to make sure anyone seventeen years or younger anywhere in the vehicle is properly restrained. TEX. TRANSP. CODE §§ 545.413(a), (b). The prohibition against seat-belt evidence in civil trials remained intact throughout the law's evolution until 2003, when the Legislature repealed the provision as part of the sweeping House Bill 4 tort-reform legislation. Act of June 11, 2003, 78th Leg., R.S., ch. 204,

8

§ 8.01, 2003 Tex. Gen. Laws 863, 863 (repealing TEX. TRANSP. CODE §§ 545.412(d), 545.413(g)). The Legislature did not replace the prohibition with any language affirming the use of seat-belt evidence—it simply struck the provision altogether.

## III

### A

Nabors argues legislative history reveals the purpose of the repeal was to begin allowing seat-belt evidence in civil trials. The families argue that if the Legislature intended that, it could have enacted language favoring admissibility or overruling *Carnation*. We simply take the Legislature's action at face value—it once had something specific to say about seat-belt evidence, and now it does not. *See Girouard v. United States*, 328 U.S. 61, 69 (1946) ("It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law."); *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) ("[L]egislative silence . . . may reflect many things, including implied delegation to the courts or administrative agencies, lack of consensus, oversight, or mistake."). But everyone in this case agrees the statutory repeal revived this Court's holding in *Carnation*, a common-law rule subsumed for eighteen years by a broader statutory prohibition but never overruled. The question is whether that rule, established more than forty years ago, should still stand today. To answer, we will not strain to determine legislative intent behind the Legislature's statutory repeal and subsequent silence; instead, what the Legislature *has* said will guide us. And while the Legislature now says nothing about seat-belt evidence specifically, it has said much since *Carnation* about the assignment of responsibility in negligence lawsuits.

The evolution of Texas's system for attributing fault in negligence cases over the past four decades is well documented. At the time *Kerby* and *Carnation* were tried, Texas "followed the all-or-nothing system of contributory negligence." *Dugger v. Arredondo*, 408 S.W.3d 825, 830 (Tex. 2013). "Under contributory negligence, if a plaintiff was even one percent at fault, he or she could not recover." *Id.*; *see also Parrot*, 436 S.W.2d at 901. In 1973, the Legislature adopted article 2212a, the first comparative-negligence statute, evincing "'a clear policy purpose to apportion negligence according to the fault of the actors.'" *Dugger*, 408 S.W.3d at 830 (quoting *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 518 (Tex. 1978)); *see also* Act of April 9, 1973, 63d Leg., R.S., ch. 28, §§ 1–2, 4–5, art. 2212a, 1973 Tex. Gen. Laws 41, 41–43, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 33.001, 1985 Tex. Gen. Laws 3242, 3270–71. Later, the Legislature replaced article 2212a with the comparative-responsibility framework in chapter 33 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004; Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 1, secs. 33.001–.004, 1985 Tex. Gen. Laws 3242, 3270–71, *amended by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.03–.12, secs. 33.001–.004, 1987 Tex. Gen. Laws 37, 41–44; *JCW Electrs., Inc. v. Garza*, 257 S.W.3d 701, 703 (Tex. 2008) (setting out the evolution of comparative-fault rules in Texas). In 1995, the Legislature modified Chapter 33 by replacing comparative responsibility with proportionate responsibility. Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971–75 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004). Section 33.003(a) now provides:

> The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which

recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

> (1) each claimant;
> (2) each defendant;
> (3) each settling person; and
> (4) each responsible third party who has been designated under Section 33.004.

Gone is the "harsh system of absolute victory or total defeat." *See Parker*, 565 S.W.2d at 518. Under proportionate responsibility, the fact-finder apportions responsibility according to the relative fault of the actors, thus allowing a plaintiff to recover while reducing that recovery by the percentage for which the plaintiff was at fault. As long as the plaintiff's own responsibility does not exceed 50%, he is entitled to a recovery reduced by his responsibility percentage. TEX CIV. PRAC. & REM. CODE §§ 33.001, 33.012. And the statute casts a wide net over conduct that may be considered in this determination, including negligent acts or omissions as well as any conduct or activity that violates an applicable legal standard. The directive is clear—fact-finders should consider each person's role in causing, "in any way," harm for which recovery of damages is sought. The question we now face is whether the "sharp distinction" between occurrence-causing and injury-causing negligence this Court drew in *Kerby* is still viable in light of the Legislature's current mandate. In other words, can a plaintiff's failure to use a seat belt, though it did not cause the car accident, limit his recovery if it can be shown that the failure to use a seat belt caused or contributed to cause his injuries?

**B**

This Court has never absolved plaintiffs of a duty to use seat belts, nor has it held seat-belt evidence irrelevant. Rather, in *Kerby* and *Carnation*, the Court struggled with the mismatch between

11

the character of seat-belt evidence and the legal doctrines that might support its admission. One option was to treat it as evidence of a plaintiff's failure to mitigate his damages—a doctrine typically applied to a post-occurrence action, such as when a plaintiff fails to follow his doctor's treatment instructions. *See, e.g.*, *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 447 (Tex. 1967) ("We recognize the universality of the rule that an injured person cannot recover damages which can be avoided by that care and treatment of his injury which an ordinary prudent person would exercise in the same or similar circumstances . . . ."). Courts were accustomed to instructing juries to consider a plaintiff's failure to mitigate when awarding damages, but the doctrine proved awkward when applied to *pre*-occurrence actions—how can one mitigate damages that have not yet occurred? *See Kerby*, 503 S.W.2d at 528. The other option was to treat seat-belt nonuse as contributory negligence, which would entirely bar a plaintiff's recovery. But the Court dismissed this option. *See Carnation*, 516 S.W.2d at 116 ("We reject those cases barring completely plaintiff's recovery based on contributory negligence; our courts have not followed such an approach.") (citations omitted). So under the existing legal framework, there simply was no vehicle to logically or fairly admit seat-belt evidence.

The holdings in *Kerby* and *Carnation* are best viewed as examples of a class of common-law doctrines designed to blunt the austerity of an all-or-nothing contributory-negligence scheme and ensure an equitable civil-justice system for all Texans. After the Legislature adopted comparative negligence in 1973, this Court "sought to abolish those doctrines directed to the old choice between total victory and total defeat for the injured plaintiff." *French v. Grigsby*, 571 S.W.2d 867, 867 (Tex. 1978) (abolishing doctrine of last clear chance or discovered peril). More than forty years later, "'we

12

have discarded categories like imminent[-]peril, last-clear-chance, and assumption-of-the-risk in favor of a general submission of comparative negligence.'" *Del Lago Partners., Inc. v. Smith*, 307 S.W.3d 762, 772 (Tex. 2010) (quoting *Jackson v. Axelrad*, 221 S.W.3d 650, 654 (Tex. 2007)). But we are still occasionally called on to shake off vestiges of our defunct contributory-negligence scheme. As recently as 2013, for example, we held the common-law unlawful-acts doctrine could not coexist alongside proportionate responsibility. *Dugger*, 408 S.W.3d at 827.

The systematic elimination of outmoded ameliorative doctrines has led to speculation about the continued viability of the "sharp distinction" we recognized in *Kerby*. So far, however, the Court has stopped short of a formal declaration that proportionate responsibility incorporates both occurrence-causing and injury-causing conduct. *See Thomas v. Uzoka*, 290 S.W.3d 437, 444 n.2 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (observing the Legislature "may have intended to abolish the common-law distinction between a plaintiff's 'occurrence-causing' and 'injury-causing' negligence"); Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts, Workers' Compensation* PJC 4.1 cmt. at 53 (2014) ("The Committee is unable to determine whether the [L]egislature, by using 'injury' in section 33.011(4), intended to abolish the distinction between 'occurrence-causing' and 'injury-causing' contributory negligence and mandate the use of 'injury' to the preclusion, at any time, of 'occurrence.'"). The Third Restatement has specifically cited *Carnation* as an example of how "[s]ome courts used to forgive a plaintiff of *pre-accident* negligence that merely aggravated the injury." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 3 Reporter's Note, cmt. b at 39 (2000) (emphasis in original). Of such decisions, the Restatement observes:

13

They gave various rationales for this rule, including that the legislature had not mandated the conduct, that counting the conduct would constitute a windfall for the defendant, and that a plaintiff should not have to foresee and guard against the possibility of a defendant's negligence. None of these rationales provides an adequate account for the rule, because each of them could be applied with equal force to ordinary contributory negligence. . . . [T]he most satisfactory explanation is that courts were hostile to the harsh consequences of contributory negligence as an absolute bar to recovery and developed the rule as an ameliorative device. Comparative responsibility eviscerates that rationale.

*Id.* at 39–40 (internal citations omitted).

## C

Our precedents holding that a plaintiff's injury-causing negligence cannot reduce a plaintiff's recovery cannot stand if today's proportionate-responsibility statute contradicts those precedents. And we hold it does. We recently observed in *Dugger* that the proportionate-responsibility statute "indicates the Legislature's desire to compare responsibility for *injuries* rather than bar recovery, even if the claimant was partly at fault or violated some legal standard." *Dugger*, 408 S.W.3d at 832 (emphasis added). Although we did not then directly address the distinction between injury-causing and occurrence-causing negligence drawn by *Kerby*, our reference to "injuries" was not accidental—it reflected the language chosen by the Legislature in the proportionate-responsibility statute. Under that scheme, the fact-finder must allocate the "percentage of responsibility" for each claimant, defendant, settling person, and responsible third party. TEX. CIV. PRAC. & REM. CODE § 33.003(a). And "percentage of responsibility" is defined as:

that percentage, stated in whole numbers, attributed by the trier of fact to each claimant, each defendant, each settling person, or each responsible third party with respect to *causing or contributing to cause in any way*, whether *by negligent act or omission*, by any defective or unreasonably dangerous product, *by other conduct or activity violative of the applicable legal standard*, or by any combination of the

14

foregoing, *the personal injury*, property damage, *death*, or any other harm for which recovery of damages is sought.

*Id.* § 33.011(4) (emphasis added).

Section 33.011(4) directs the fact-finder to assign responsibility to plaintiffs who cause or contribute to cause "in any way" personal injury or death. Similarly, section 33.003(a) also holds plaintiffs accountable for "causing or contributing to cause in any way the harm for which recovery of damages is sought." "In any way" can mean only what it says—there are no restrictions on assigning responsibility to a plaintiff as long as it can be shown the plaintiff's conduct "caused or contributed to cause" his personal injury or death. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976)). We cannot maintain a "sharp distinction" between two categories of evidence when the Legislature has instructed fact-finders to consider conduct that was "in any way" a cause of the plaintiff's damages.

Furthermore, sections 33.003(a) and 33.011(4) focus the fact-finder on assigning responsibility for the "harm for which recovery of damages is sought"—two examples of which are "personal injury" and "death"—and not strictly for the underlying occurrence, such as a car accident. This distinction recognizes plaintiffs do not sue simply because they were involved in a car accident; they sue because they suffered damages for which they have not been compensated. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) ("Negligence actions in Texas require 'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'") (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).

15

Though the facts of the occurrence, such as who caused the car accident, shape the narrative of the case and rightly contribute to the fact-finder's responsibility apportionment, the proportionate-responsibility statute specifies the apportionment should ultimately be based on responsibility for the damages suffered, in this case personal injury and death. Accordingly, the question is not simply who caused the car accident, but who caused the plaintiff's injuries.

We believe most reasonable people considering who caused a plaintiff's injuries in a car accident would not lean on a logical distinction between occurrence-causing and injury-causing conduct. Rather, most would say a plaintiff who breaks the law or otherwise acts negligently by not using a seat belt is at least partially responsible for the harm that befalls him. This is true even if he did not cause the car accident, provided it can be shown the failure to buckle up exacerbated his injuries. It is this common-sense approach, and not a philosophical abstraction articulated over forty years ago, that our proportionate-responsibility statute captures. We do not suggest there is no logical difference between occurrence-causing and injury-causing conduct. The sharpest rhetorical argument against admitting seat-belt evidence has been that failure to use a seat belt cannot *cause* an accident, and it is those who cause accidents who should pay. But it is equally true that failure to use a seat belt will sometimes exacerbate a plaintiff's injuries or lead to his death. Accordingly, the conclusion is unavoidable that failure to use a seat belt is one way in which a plaintiff can "cause[] or contribut[e] to cause in any way" his own "personal injuries" or "death." TEX. CIV. PRAC. & REM. CODE §§ 33.003(a), 33.011(4). The proportionate-responsibility statute calls for an apportionment of fault for "personal injuries" and "death" rather than for the underlying occurrence that introduced

16

a sequence of events in which the end result is potentially influenced by whether the plaintiff acted unreasonably or even broke the law.

Given the statute's plain language, and without any statutory language preserving the distinction set out in *Kerby* or our holding in *Carnation*, we conclude that, for purposes of the proportionate-responsibility statute, the Legislature both intends and requires fact-finders to consider relevant evidence of a plaintiff's pre-occurrence, injury-causing conduct. This comports with the modern trend in tort law toward "abolishing doctrines that give all-or-nothing effect to certain types of plaintiff's negligence based on the timing of the plaintiff's and defendant's negligence" and instead considering "the timing of the plaintiff's and defendant's negligence [as] factors for assigning percentages of responsibility." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 3, Reporter's Note, cmt. b at 41. We do not quarrel with the approach this Court took when it decided *Kerby* and *Carnation*. We simply reach the issue again under a different legal system that considers seat-belt evidence in a way the contributory-negligence scheme could not. Accordingly, although we must overrule *Kerby* and *Carnation* to effect today's decision, we do not reject them as mistaken jurisprudence, but as once-prudent measures that have outlived their usefulness.

**D**

Today's holding opens the door to a category of evidence that has never been part of our negligence cases, but we need not lay down a treatise on how and when such evidence should be admitted. Seat-belt evidence has been unique only in that it has been categorically prohibited in negligence cases. With that prohibition lifted, our rules of evidence include everything necessary to handle the admissibility of seat-belt evidence. As with any evidence, seat-belt evidence is admissible

17

only if it is relevant. *See* TEX. R. EVID. 401, 402. And relevance is the trial court's province. *See id.* 104(a). The defendant can establish the relevance of seat-belt nonuse only with evidence that nonuse caused or contributed to cause the plaintiff's injuries. And the trial court should first consider this evidence, for the purpose of making its relevance determination, outside the presence of the jury. *See id.* 104(c). Otherwise, the jury will have already heard evidence of nonuse before such evidence has been deemed relevant. Expert testimony will often be required to establish relevance, but we decline to say it will be required in all cases. And, of course, like any other evidence, even relevant seat-belt evidence is subject to objection and exclusion under Rule 403.

Our holding should likewise not introduce any confusion into how to construct a jury charge when seat-belt evidence or any other pre-occurrence, injury-causing conduct is admitted. Under section 33.003(a), the fact-finder may consider relevant evidence of a plaintiff's failure to use a seat belt as a "negligent act or omission" or as a violation of "an applicable legal standard" in cases where the plaintiff was personally in violation of an applicable seat-belt law. *See* TEX. CIV. PRAC. & REM. CODE § 33.003(a). And in cases in which an unrestrained plaintiff was not personally in violation of a seat-belt law, the fact-finder may consider whether the plaintiff was negligent under the applicable standard of reasonable care. This scenario is likely to arise when children are among the passengers of the plaintiff's vehicle. Most children do not violate seat-belt laws by failing to restrain themselves; rather, it is the driver upon whom the law places the responsibility to properly restrain them. Nonetheless, a minor is still held to the degree of care that would be exercised by an "ordinarily prudent child of [the same] age, intelligence, experience and capacity . . . under the same or similar circumstances." *Rudes v. Gottschalk*, 324 S.W.2d 201, 204 (Tex. 1959). The jury may

18

further apportion third-party responsibility to the person upon whom the law places the burden to properly restrain the child.

There also should be no confusion on the relationship of this holding with the existing failure-to-mitigate-damages doctrine. A plaintiff's failure to mitigate his damages traditionally occurs post-occurrence and, as noted in *Kerby*, the doctrine does not readily translate in the pre-occurrence context. 503 S.W.2d at 528 (noting "conceptual difficulty of applying the mitigation[-]of[-]damages concept to Plaintiff's conduct antedating the negligence of the Defendant"). That distinction remains. A plaintiff's post-occurrence failure to mitigate his damages operates as a reduction of his damages award and is not considered in the responsibility apportionment. It is only the plaintiff's *pre*-occurrence, injury-causing conduct that should be considered in the responsibility apportionment.

Lastly, there is no need, as some have suggested, to deviate from a single apportionment question. *See* Bagley, *supra*, at 736–37 (suggesting two fault analyses). A jury can consider a plaintiff's pre-occurrence, injury-causing conduct alongside his and other persons' occurrence-causing conduct. In crashworthiness cases, for instance, a product defect often "causes or enhances injuries but does not cause the accident"; nonetheless, "[t]he jury is asked to apportion responsibility between all whose actions or products combined to cause the entirety of the plaintiff's injuries." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984). This exercise may at times prove challenging for jurors, but no more so than what they already face in distilling the multiple factors they must consider in one responsibility allocation. There is nothing about injury-causing conduct

that renders it incompatible with being considered alongside occurrence-causing conduct in one responsibility apportionment for the harm suffered by the plaintiff.

**E**

Today's holding is rooted in statutory interpretation and the unavoidable conclusion that our proportionate-responsibility statute both allows and requires fact-finders to consider pre-occurrence, injury-causing conduct. But the arguments against allowing seat-belt evidence, including some urged by the families in this case, transcend statutory interpretation and touch on themes of general fairness and fundamental principles of tort law. We respond to them because we believe our holding is not merely correct statutory interpretation; it also promotes sound public policy.

Attitudes toward use of seat belts have evolved drastically since the early 1970s. When we decided *Kerby* and *Carnation*, seat-belt use was not required by law. Car manufacturers had only recently been required to install seat belts as standard equipment on all passenger vehicles, but relatively few people wore them—as few as 14% nationwide in 1984, the year before Texas enacted its first seat-belt law. Peter Scaff, *The Final Piece of the Seat Belt Evidence Puzzle*, 36 HOUS. L. REV. 1371, 1378 n.43 (1999). But in the intervening time since seat-belt use became the law, that number has jumped to 84%. NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., DEP'T OF TRANSP., DOT HS 811 651, TRAFFIC SAFETY FACTS, CRASH STATS–SEAT BELT USE IN 2011 1–2 (Aug. 2012). And Texas boasts an even higher usage rate of 93.7%. *Id.*

A wealth of research has established that seat belts reduce injuries and save lives. According to the National Highway Traffic Safety Administration, seat belts prevent more than 11,000 deaths each year. NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., DEP'T OF TRANSP., DOT HS 810 649,

20

PRIMARY ENFORCEMENT SAVES LIVES–THE CASE FOR UPGRADING SECONDARY SAFETY BELT LAWS 25 (Sept. 2006). And while ejection is "one of the most injurious events that can happen to a person during a crash," seat belts are up to 99% effective at preventing "total ejections." *Id.* The percentage of seat-belt nonuse in fatal accidents is alarming. For example, in 2012, between 48% and 54% of people killed in car accidents were not using seat belts. NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., DEP'T OF TRANSP., DOT HS 812 070, TRAFFIC SAFETY FACTS, 2012 DATA–PASSENGER VEHICLES 4 (Sept. 2014). But we will not belabor the point with statistics. To do so suggests there is still legitimate debate over the propriety of seat-belt use. That debate has long ended. Seat-belt laws are now in effect in every state, and the vast majority of Texans buckle up on a regular basis. Yet until today a contradictory legal system punished seat-belt nonuse with criminal citations while allowing plaintiffs in civil lawsuits to benefit from juries' ignorance of their misconduct.

Perhaps the most common argument against seat-belt evidence is one we have already addressed—that the failure to use a seat belt does not *cause* an accident, and it is those who cause accidents who should pay. But as we have pointed out, our legal system now takes a broader view toward assigning responsibility for a plaintiff's damages. So although this argument points out a logical distinction between occurrence-causing and injury-causing conduct, it engages a debate the Legislature has settled—the distinction does not immunize a plaintiff from his own injury-causing conduct.

Some argue that admitting seat-belt evidence violates the principle that a plaintiff is not required to anticipate the negligent or unlawful conduct of another. *See Humble Oil & Refining Co. v. Martin*, 222 S.W.2d 995, 1001 (Tex. 1949) (noting the "general axiom that a person is not bound

to anticipate the negligence of others"). But this has never been a steadfast rule of tort law. Rather, it is a guiding principle the law has balanced with the duty everyone has to guard against foreseeable risks—a duty that has been recognized at least since *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y. 1928). *See also The Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000) ("Contributory negligence contemplates an injured person's failure to use ordinary care in regard to his or her own safety."). We have consistently held that foreseeability turns on existence of a general danger, not awareness of the exact sequence of events that produces the harm. *See, e.g.*, *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999) (collecting cases). The general danger of driving is obvious to everyone. The NHTSA reports that in 2012, the most recent year for which data is available, nearly ten million passenger-vehicle accidents occurred, causing injuries to two million people—and these numbers encompass only accidents reported to police. NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., DEP'T OF TRANSP., DOT HS 812 070, TRAFFIC SAFETY FACTS, 2012 DATA–PASSENGER VEHICLES 1 (Sept. 2014). From the rural Texan who braves harrowing two-lane highways to the urban commuter who plans his route to avoid daily accident-related congestion, the dangers of driving are ubiquitous. So when it comes to foreseeing the general hazard of automobile travel, "[t]here is nothing to anticipate; the negligence of other motorists is omnipresent." *Law v. Superior Court*, 755 P.2d 1135, 1141 (Ariz. 1988). Indeed, by enacting seat-belt laws, the Legislature has required motorists to anticipate the negligence of others.

Finally, some insist that admitting seat-belt evidence provides a windfall for defendants who will be relieved of paying the full damages caused by their negligence. But the reverse is equally arguable—a plaintiff whose injuries were exacerbated by failure to use a seat belt benefits from the

22

jury's ignorance of his own conduct. The result is certainly an oddity: the unbelted plaintiff is likely to be punished with a criminal citation carrying a monetary fine from the police officer investigating the accident, but in the civil courtroom his illegal conduct will be rewarded by monetary compensation. There are no windfalls under the rule we announce today. Even when trial courts properly admit seat-belt evidence, defendants will still be held liable for the damages they caused, but not the injuries the plaintiff caused by not using a seat belt.

## IV

The families argue we need not reconsider the seat-belt evidence prohibition in *Carnation* because without Dr. Funk's injury-causation testimony, excluded on *Robinson* grounds, Nabors has no evidence the plaintiffs' failure to use seat belts caused their injuries or the lone fatality. Nabors argues the jury could have inferred injury causation from other evidence even without the excluded expert testimony. Specifically, Nabors suggests ejection itself gives rise to a reasonable inference that the occupant was unbelted, and that Dr. Funk's "biomechanical testimony" alone would have established the plaintiffs "would not have been flung around inside—nor ejected from—the Suburban if they had been wearing their seat belts."

The trial court relied on our precedent in prohibiting seat-belt evidence but insisted it would have struck Dr. Funk's injury-causation testimony on *Robinson* grounds even if seat-belt evidence were allowed. Nabors argued to the court of appeals that the trial court abused its discretion in excluding Dr. Funk's injury-causation testimony, but the court of appeals affirmed the trial court's judgment solely on the ground that seat-belt evidence was properly excluded. It did not address the independent *Robinson* issues.

23

We decline to consider whether the trial court acted within its discretion in limiting Dr. Funk's testimony or whether Nabors had sufficient injury-causation evidence without Dr. Funk's full testimony. Those issues were not considered by the court of appeals and were not fully briefed to this Court. Instead, this appeal has turned on whether *Carnation* should still stand. We believe any remaining issues will be elucidated with the *Carnation* prohibition no longer in place and that the parties will benefit from the opportunity to narrow their focus at the court of appeals to these remaining issues.

* * *

We hold relevant evidence of use or nonuse of seat belts, and relevant evidence of a plaintiff's pre-occurrence, injury-causing conduct generally, is admissible for the purpose of apportioning responsibility under our proportionate-responsibility statute, provided that the plaintiff's conduct caused or was a cause of his damages. Accordingly, we reverse the court of appeals' judgment and remand this case to the court of appeals for further proceedings consistent with this opinion.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: February 13, 2015

24