**Affirmed and En Banc Majority Opinion and En Banc Dissenting Opinions filed May 18, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00967-CV

---

### WERNER ENTERPRISES, INC. AND SHIRAZ A. ALI, Appellants

### V.

### JENNIFER BLAKE, INDIVIDUALLY AND AS NEXT FRIEND FOR NATHAN BLAKE, AND AS HEIR OF THE ESTATE OF ZACHERY BLAKE, DECEASED; AND ELDRIDGE MOAK, IN HIS CAPACITY AS GUARDIAN OF THE ESTATE OF BRIANA BLAKE, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2015-36666**

---

### EN BANC DISSENTING OPINION

I respectfully dissent. I will not address all of the majority's opinion[1] but will primarily address those parts necessary to show the basis for my conclusion that, for

---

[1] I do not discuss an issue if I have concluded that the majority reached the correct holding on that matter, or if the majority's holding would be immaterial under my resolution of the case.

the reasons discussed below, the trial court's judgment should be reversed and the case remanded, subject only to the Blakes' right to move for recovery under alternative favorable findings.

## I. ALI'S NEGLIGENCE

Werner and Ali's primary focus on appeal has been their challenge to the jury's response to Question 3 of the charge, in which the jury found that Ali's negligence in the operation of the Werner truck on December 30, 2014, was a proximate cause of the Blakes' injuries.[2] I agree with the majority that the evidence supports a finding that Ali was negligent and that his negligence was a proximate cause of the injuries.

The Supreme Court of Texas has long held it foreseeable that a vehicle may cross into opposing traffic. *See Biggers v. Cont'l Bus Sys., Inc.*, 303 S.W.2d 359, 363–64 (Tex. 1957); *see also Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 387 (Tex. 1989). Werner and Ali argue that *Biggers* has been essentially overruled by later Supreme Court cases discussing the substantial-factor component of proximate cause. But, without a more explicit holding from the Supreme Court we are bound by *Biggers* and its progeny. *See also Baumler v. Hazelwood*, 347 S.W.2d 560, 565 (Tex. 1961) (whether the operator's excessive speed can be a proximate cause of a collision in the operator's own lane of traffic with a vehicle traveling in the opposite direction "depends upon the facts").

Werner and Ali argue that the facts of this case are distinguishable from *Biggers* because Ali was not exceeding the posted speed limit. But, whether a driver's speed is excessive or is the proximate cause of a collision depends on the

---

[2] I agree with the majority that the trial court did not abuse its discretion in submitting jury questions inquiring whether a party's negligence was a proximate cause "of the injuries in question." *See Nabor Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 559–60 (Tex. 2015).

circumstances. In *Baumler*, for example, the court explained that the defendant driver traveling at 55 m.p.h. would not have been using excessive speed, not because this was the posted speed limit, but because "there is no evidence that he, in good health with good eyesight, should have been traveling at a lesser rate of speed on the uncrowded, smooth, level, and straight paved highway on the clear, bright night in his new car with good tires." *Id.* at 563–64. In contrast, the court held in *Lofton* that the intermediate appellate court improperly analyzed the evidence in concluding that the evidence was factually insufficient to support the finding that the speed of the defendant driver was not a proximate cause of a head-on collision. *Lofton*, 777 S.W.2d at 386. Although the driver in that case was traveling at only 40–50 m.p.h., which was below the posted speed limit,[3] there was evidence "that the fog was so thick that at that speed one could not stop or avoid an object in the roadway after seeing it." *Id.* at 387. As the court pointed out, "The general danger of driving so fast in fog that one cannot stop or avoid an object in the roadway is foreseeable." *Id.* As these cases illustrate, the condition of the driver, the traffic, the weather, and the roads all can affect the speed at which it is foreseeable that a driver will be unable to avoid striking an obstacle that enters the driver's lane—regardless of how the obstacle came to be there.

## II. WERNER'S NEGLIGENCE

In the first two questions of the charge, the jury was asked to consider a total of three theories under which Werner could be found negligent. Werner challenges the sufficiency of the evidence to support the jury's affirmative answers to those questions, and in addition, Werner complains of charge error as to both questions.

---

[3] The speed limit was stated in the intermediate appellate court's opinion. *See Tex. Brine Corp. v. Lofton*, 751 S.W.2d 197, 199 (Tex. App.—Houston [14th Dist.] 1988), *rev'd*, 777 S.W.2d 384 (Tex. 1989).

The issue of whether Werner's charge objections were valid affects the standard by which evidentiary sufficiency is measured. Absent a valid charge objection, the reviewing court measures the sufficiency of the evidence against the charge as given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (sub. op.). But if the appellant preserved a valid objection to the charge, then the reviewing court must measure evidentiary sufficiency against the charge that *should* have been given. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). Thus, as to each of the first two questions of the charge, I would determine, first, whether Werner's appellate complaint was preserved by a valid objection, and second, the sufficiency of the evidence to support the jury's finding.

## A. Question 1: Unspecified Negligence

In Question 1, the jury was asked, "Was the negligence, if any, of Werner acting through its employees other than Shiraz Ali a proximate cause of the injuries in question?" In an accompanying instruction, the jury was told not to consider Werner's negligence, if any, in training or supervising Ali; negligent training and supervision were the subject of a separate question. In a second instruction, the jury was told,

> "Negligence," when used with respect to the conduct of Werner, means failure to use ordinary care, that is, failing to do that which a trucking company of ordinary prudence would have done under the same or similar circumstances or doing that which a trucking company of ordinary prudence would not have done under the same or similar circumstances.

Neither the question nor the accompanying instructions identified any specific duty that Werner, through its employees, was required to fulfill with ordinary care.

Werner argues on appeal that whether a duty exists is a question of law to be decided by the court. Werner points out that the Supreme Court of Texas held in

4

*Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499 (Tex. 2017), that in determining what duties an employer has regarding its employees, courts cannot simply require employers "to exercise ordinary care in all circumstances," but must be "more specific." *Id.* at 506, 504.

The majority embarks on a lengthy discussion of whether there is a general duty of negligence in this case. *See* Part B.1, *supra*. This directly contradicts the holding of *Pagayon*, and the analysis itself is flawed. The majority's analysis fails to specifically identify what the exact duty was—outside of supervision and training. It also puts the burden on Werner to rebut the duty the majority created (that no court has ever recognized). It is not Werner's obligation to provide evidence of the magnitude of the burden imposed by this court. The record—in support of the duty—must show that it is not burdensome. It is ultimately the plaintiff's obligation to prove the existence of a duty. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989) ("The plaintiff must prove that there is a duty owed to him by the defendant."); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987) ("Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort."); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("In order to establish tort liability, a plaintiff must initially prove the existence and breach of a duty owed to him by the defendant."); *Coleman v. Hudson Gas & Oil Corp.*, 455 S.W.2d 701, 702 (Tex. 1970) ("Any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant in order to establish tort liability.").

If there is no evidence in the record of certain aspects of the duty, we do not presume them in favor of a duty nor do we fault the defendant with waiver as the majority does in its chart—at best it creates a situation where a new trial is required. *See Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 195 (Tex. 2004)

(remanding for a new trial for the trial court to specifically identify the duty and tailoring the jury issue to the disputed fact issue). This is the specific holding in *Pagayon*—the trial court must identify the duty and the jury must be charged on that duty.

### 1. *Werner preserved its appellate complaint that the submission of Question 1 was contrary to* **Pagayon.**

Werner preserved its appellate complaint by objecting to Question 1 in the trial court as follows:

> As well, we object to the submission of Question No. 1 because it asserts direct claims against Werner that could include things for which the Texas Supreme Court has not stated there is a general duty to the plaintiffs in these circumstances.

> For example, in the *Pagayon* case, which is 536 S.W.3d 499, which was the Texas Supreme Court case issued in 2017, that court said that it is not enough simply to require employers or others to exercise ordinary care in all circumstances. Texas law requires the courts to be more specific to balance relevant factors in determining the existence, scope, and elements of legal duties. . . .

> This question as submitted does not frame what are the duties, what are the elements of the causes of action or cause of action that Werner is accused of committing or omitting as negligence and so for these reasons we object to the submission in Question No. 1.

Despite the preservation of Werner's complaint in the trial court, and the re-urging of that complaint on appeal, the majority has failed to address it. *But see* TEX. R. APP. P. 47.1 (appellate court's written opinion must "address[] every issue raised and necessary to final disposition of the appeal"). Resolution of this issue is necessary to the final disposition of this appeal because Werner's objection was correct, as explained below.

6

**2.** ***Because employers do not owe third parties unspecified duties of ordinary care regarding employees' actions, the trial court reversibly erred in overruling Werner's objection.***

Question No. 1 imposed a general negligence duty on Werner, acting through its employees other than Ali. The question did not define what that duty was—what objective conduct such unidentified employees were required to perform, or to refrain from performing—instead leaving individual jurors to make up these standards for themselves. The only restriction was that jurors were not to consider any negligence by Werner in training or supervising Ali.

The Blakes argue that the trial court did not err in overruling Werner's objections because a general negligence duty is appropriate. But, the existence of a duty is a question of law for the court to decide, not jurors. *See Pagayon*, 536 S.W.3d at 503. And courts must determine both "whether a duty exists, *and what it is*." *Id.* at 505–06 (emphasis added). As the Supreme Court of Texas has expressly stated, "It is not enough simply to require employers, or others, to exercise ordinary care in all circumstances." *Id.* at 506.

That is precisely what Question 1 did. Each individual juror was free to determine for himself or herself the duties that employees other than Ali owed. Jurors were not even limited to considering duties owed to the Blakes. And because we cannot know what duties jurors decided upon, we cannot determine whether Werner actually owed such duties, much less whether the duty was breached or whether the breach was a proximate cause of the Blakes' injuries. Thus, the trial court's error in including this question is reversible. *See* TEX. R. APP. P. 44.1(a).

**B.    Question 2: Werner's Duty to Supervise and Train Its Employees**

Question 2 of the charge was as follows:

7

Was the negligence, if any, of Werner acting through its employees other than Shiraz Ali in the manner stated below a proximate cause of the injuries in question?

Consider Werner' s negligence, if any, in the following

A    supervising Shiraz Ali, but only if you find that Shiraz Ali was incompetent or unfit, and Werner knew, or through the exercise of ordinary care should have known, that Shiraz Ali was incompetent or unfit, thereby posing an unreasonable risk of harm to others, and

B    training Shiraz Ali

Although I agree with the majority that the submission of this question was not erroneous, I disagree with the majority's analysis.

### 1.    *Werner preserved its Casteel complaint.*

"When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000) (op. on reh'g). "*Casteel* and its progeny are intended to remedy the trial court's error in failing to eliminate—or at least to segregate—the factfinder's consideration of invalid claims." *Zaidi v. Shah*, 502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). To preserve a *Casteel* complaint, it is sufficient "for the complaining party to make a specific objection to the form of the charge to put the trial court on notice of the alleged error and afford the court an opportunity to correct the error." *Thota v. Young*, 366 S.W.3d 678, 690 (Tex. 2012).

Question 2 is a broad-form liability question in which the jury could base liability on negligent supervision or on negligent training. At the charge conference, Werner stated with regard to Question 2, "because it improperly combines different

claims of the causes of action, *both valid and invalid*, we object to the submission of this question."[4] This was sufficient to preserve Werner's *Casteel* complaint. *See Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 536 (Tex. 2012) (per curiam) ("*Casteel* error may be preserved without specifically mentioning *Casteel*.").

But Werner went further, objecting to the form of the question and specifically referencing *Casteel:*

> We also object to this question because this question itself is combining two separate and distinct causes of action in one question. So there's a *Casteel* problem within and unique to this question because a "yes" answer from a jury, ten or more of the jury, we won't know whether ten or more of them or all of them believed both causes of action were supported by the evidence or what they based their findings on. So there's a *Casteel* problem in this question by combining these two claims.

This objection was independently sufficient to preserve a *Casteel* complaint to the form of the question. Not only does the objection specifically point out that "there's a *Casteel* problem," but the objection was sufficient to "put a trial court on notice to submit a granulated question to the jury." *In re A.V.*, 113 S.W.3d 355, 363 (Tex. 2003).

But there's still more. A party can preserve a *Casteel* complaint by objecting that at least one theory included in a multi-theory, broad-form liability question lacks evidentiary support. *Thota*, 366 S.W.3d at 691. Werner made this objection as well, stating there was no evidence that Werner owed the duties included in the question, no evidence of any breach of such duties, and no evidence that a breach of such duties proximately caused the collision or the Blakes' injuries.

---

[4] Emphasis added.

9

In *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014), the Supreme Court of Texas stated that "*some* timely and specific objection must raise the [*Casteel*] issue in the trial court," but declined to hold that a party "must object both to the lack of evidence to support submission of a jury question *and* the form of the submission." Here, Werner objected to evidentiary sufficiency, *and* objected to the form of the submission *and* specifically cited *Casteel*.

Werner's comprehensive *Casteel* objections far exceeded the level of specificity required to preserve its *Casteel* complaint for appellate review. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (charge error is preserved if "the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling"). The majority's contrary conclusion is frankly inexplicable.

Because Werner's complaint was preserved, I would determine whether Question 2 truly did combine valid and invalid theories, that is, whether the Blakes proved that Werner was negligent in *both* supervising and training Ali. I would conclude that both causes of action are recognized under this Court's precedent, and that there is legally and factually sufficient evidence of both.

### III. PROPORTIONATE RESPONSIBILITY

To review, Question 1 erroneously submitted a general negligence question concerning Werner's employees other than Ali; Question 2 submitted Werner's negligence in supervising and training Ali; Question 3 submitted Ali's negligence; and Question 4 submitted Salinas's negligence.

These liability questions were followed by three proportionate-responsibility questions. In Question 5, under which the Blakes elected to recover, the jury was asked to apportion responsibility for the Blakes' injuries among "Werner, acting

10

through its employees other than Shiraz Ali," Ali, and Salinas. The jury found Salinas 16% responsible; Ali 14% responsible; and Werner 70% responsible.

A fatal flaw in this question is that it is predicated on affirmative answers to "Questions 1, 2, 3, or 4 for more than one of those named below," i.e., Werner, Ali, and Salinas. Werner objected that "there's a *Casteel* problem" in that Questions 1, 2, and 3 "permitt[ed] the jurors to consider valid and invalid legal theories for which the defendants owe no duty as well as for which there's no evidence to support any finding of liability."

For the reasons I have discussed, Question 1 did indeed submit an invalid legal theory, though both I and the majority would uphold the jury's findings in response to Question 2. The result, as I would hold, is that the jury's apportionment of liability in Question 5 was predicated on both valid and invalid theories of liability. Because there is no way to tell the extent to which the jury relied on the invalid theory submitted in Question 1, I would reverse the judgment and remand the case for a new trial.

When the prevailing party obtains favorable findings on more than theory, the trial court renders judgment under the theory that will grant the party the greatest relief. *See Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). Of course, if the judgment is reversed on appeal, that party may seek recovery under an alternative theory. *Id.* Thus, if the judgment were reversed for the reasons I have explained, the Blakes could, in lieu of a new trial, file a motion for rehearing en banc to ask the Court to instead render judgment in accordance with the proportionate-responsibility findings in Question 7, which is not predicated on an invalid theory of liability.

11

## IV. RESPONSE TO JUSTICE WILSON'S DISSENT

This Court has long supported a duty on an employer to properly supervise and train its employees. Although Justice Wilson agrees such a duty exists, he supports a rule that would not have allowed a separate comparative question on those issues in light of Werner's stipulation that Ali was acting in the course and scope of his employment at the time of the accident. I would not impose such a rule inasmuch as the proportionate-responsibility statute requires the trier of fact to determine the percentage of responsibility borne by each claimant, each defendant, each settling person, and each properly designated responsible third party. *See* TEX. R. CIV. P. 33.003.[5]

This case is a clear example of why a separate submission is required. Werner argued that Ali was trained to slow down given the conditions, but Werner also argued that the speed Ali was traveling was appropriate. Ali seems to have been given inconsistent information from Werner, some of which contradicted his other training about the appropriate speed to travel in circumstances such as those presented here. A jury could easily conclude that while Ali was negligent in not slowing to a crawl, his employer was more negligent for having contradicted that training.

If the Supreme Court of Texas should agree with Justice Wilson, I would urge the court to tell practitioners and courts the proper way to have submitted this case to the jury. Should the appropriate instruction include both the driver and his employer in one line in the charge as follows:

---

[5] This issue also often arises in connection with nurses and hospitals. Sometimes the case only involves vicarious liability but sometimes there is an independent claim against the hospital. Thus, the question of whether a course-and-scope stipulation should foreclose the submission of the kind of apportionment question at issue has broader implications beyond cases of motor-vehicle accidents.

Was the negligence, if any, of Ali/Werner, a proximate cause of the injuries in question?

Or should the matter be submitted with a combined question and instruction, such as this:

> Was the negligence of Werner, if any, a proximate cause of the injuries in question?
>
> Werner's negligence includes, but is not limited to, the negligence, if any, of Ali. You are instructed that Werner's negligence cannot be a proximate cause of the injuries in question unless you also find that Ali's negligence was a proximate cause of the injuries.[6]

## V. CONCLUSION

Because the majority has failed to address meritorious complaints that were preserved in the trial court, re-urged on appeal, and dictate the reversal of the trial court's judgment, I respectfully dissent.

/s/    Tracy Christopher
Chief Justice

En banc court consists of Chief Justice Christopher and Justices Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, Poissant, and Wilson. Justice Hassan authored the En Banc Majority Opinion, in which Justices Bourliot, Zimmerer, Spain, and Poissant joined. Chief Justice Christopher authored an En Banc Dissenting Opinion, in which Justices Wise, Jewell, and Wilson joined as to Part I and Part II.A for the reasons stated in page 6 and footnote 14 of Justice Wilson's En Banc Dissenting Opinion. Justice Wilson authored an En Banc Dissenting Opinion, in which Justices Wise and Jewell joined.

---

[6] This would be similar to question 10.12 in the General Negligence Pattern Jury Charge on negligent entrustment.