Opinion filed January 29, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00357-CV

_____

## KELLY SPURLOCK, AS LEGAL REPRESENTATIVE FOR THE ESTATE OF J.O. SPURLOCK, Appellant

## V.

## BEACON LLOYDS INSURANCE COMPANY AND GRANTHAM-ADKINS INSURANCE AGENCY, Appellees

On Appeal from the 29th District Court

Palo Pinto County, Texas

Trial Court Cause No. C43924

## O P I N I O N

This appeal involves the interpretation of a homeowner's insurance policy. Specifically, we must construe the policy to determine if coverage exists for a personal property loss alleged to have occurred after the death of the named

insured.  Appellant, Kelly Spurlock (Spurlock), as legal representative for the Estate of J.O. Spurlock, brought suit against Beacon Lloyds Insurance Company (Beacon) to recover proceeds under a homeowner's insurance policy for the loss of personal property that was allegedly stolen from a residence.  Spurlock also named Grantham-Adkins Insurance Agency (Grantham-Adkins) as a defendant.  Spurlock asserted that, if the homeowner's insurance policy that was issued by Beacon did not provide coverage for the loss of personal property, Grantham-Adkins was negligent in failing to procure coverage for the loss.  Beacon and Grantham-Adkins filed motions for summary judgment on Spurlock's claims.  The trial court granted the motions in separate orders.  Spurlock appeals the trial court's orders.  We affirm.

*Background Facts*

J.O. Spurlock owned and lived in a house in Mineral Wells, Texas, that he insured with Beacon.  The policy that Beacon issued to J.O. Spurlock was a Texas Homeowners Policy Form HO-A No. 42 TLO 7009742.  J.O. Spurlock was the only named insured under the policy.  The policy was effective from May 31, 2008, to May 31, 2009.  The "RESIDENCE PREMISES/DWELLING" listed in the declarations page of the policy was identified by the legal description of J.O. Spurlock's house.  The street address of the house was 704 Cedar in Mineral Wells.  The policy provided dwelling coverage and personal property coverage.

J.O. Spurlock died in January 2009.  Spurlock was appointed as the representative of J.O. Spurlock's estate.  In April 2009, Spurlock discovered that items of personal property had been removed from J.O. Spurlock's house at 704 Cedar in Mineral Wells.  Spurlock contended that the missing personal property items had been stolen and that the policy issued by Beacon provided coverage for the stolen personal property.  Accordingly, Spurlock filed a claim with Beacon in which he sought to recover for the loss that resulted from the theft.  Beacon

2

concluded that the policy did not provide coverage for the stolen property. Therefore, Beacon denied Spurlock's claim.

Spurlock filed suit against Beacon and Grantham-Adkins, the insurance agent that procured the Beacon policy for J.O. Spurlock. Spurlock alleged claims against Beacon for breach of contract, breach of the duty of good faith and fair dealing, common-law fraud, fraud by nondisclosure, violations of the Unfair Settlement Practices Act, violations of the Deceptive Trade Practices Act, and violations of the Prompt Payment of Claims Act. Spurlock alleged claims against Grantham-Adkins for common-law fraud, fraud by nondisclosure, violations of the Unfair Settlement Practices Act, violations of the Deceptive Trade Practices Act, violations of the Prompt Payment of Claims Act, negligent procurement, and negligent misrepresentation. Spurlock sought to recover actual damages, a statutory penalty, additional damages under the Deceptive Trade Practices Act, exemplary damages, and attorney's fees.

Beacon filed a combined traditional and no-evidence motion for summary judgment. Beacon moved for summary judgment on all of Spurlock's claims against it. Spurlock filed a response to the motion. The trial court entered an order granting Beacon summary judgment on Spurlock's breach of contract claim.

Grantham-Adkins filed a traditional motion for summary judgment on all of Spurlock's claims against it. Spurlock filed a response to the motion. On the same day, Spurlock filed an amended petition in which he alleged only claims for breach of contract and violations of the Prompt Payment of Claims Act against Beacon and a claim for negligent procurement of insurance coverage against Grantham-Adkins. Thus, in his amended petition, Spurlock abandoned the other claims that he had alleged in his earlier petition. *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 634 n.2 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The trial court entered an order granting summary judgment to Beacon on Spurlock's remaining claim against it for its alleged violations of the Prompt Payment of Claims Act. The trial court entered a separate order granting summary judgment to Grantham-Adkins on Spurlock's claim against it for negligent procurement. Collectively, the trial court's summary judgment orders disposed of all of Spurlock's claims against Beacon and Grantham-Adkins.

*Issues on Appeal*

Spurlock presents two issues for review. In his first issue, he contends that the Beacon policy provided coverage for his claim for loss of personal property and that, therefore, the trial court erred by granting summary judgment to Beacon. In his second issue, he contends that, if the policy did not provide coverage for his claim, Grantham-Adkins was negligent in failing to procure insurance to cover such a claim and that, therefore, the trial court erred by granting summary judgment to Grantham-Adkins.

*Standard of Review*

Beacon moved for traditional summary judgment on Spurlock's claims for breach of contract and for violations of the Prompt Payment of Claims Act. Grantham-Adkins moved for traditional summary judgment on Spurlock's claim for negligent procurement of insurance coverage.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The movant for traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing a summary judgment, we must consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Goodyear Tire &*

4

*Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented, and we may not ignore undisputed summary judgment evidence that cannot be disregarded. *Id.* at 755, 757.

*Interpretation of Insurance Policy*

We construe insurance policies according to the same rules of construction that apply to contracts. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008); *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the policy's language. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009); *Kelley-Coppedge, Inc. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). We give policy terms their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning. *Tanner*, 289 S.W.3d at 831; *Don's Bldg. Supply*, 267 S.W.3d at 23. No one phrase, sentence, or section of a policy should be isolated from its setting and considered apart from other provisions. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). In addition, we must give the policy's words their plain meaning, without inserting additional provisions into the contract. *Crocker*, 246 S.W.3d at 606.

If an insurance policy uses unambiguous language, we must enforce it as written. *Don's Bldg. Supply*, 267 S.W.3d at 23. If policy language is worded so that it can be given a definite or certain legal meaning or interpretation, then it is unambiguous and is construed as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If, however, the policy is susceptible to more than one reasonable

interpretation, then it is ambiguous, and we will resolve the ambiguity in favor of coverage. *Don's Bldg. Supply*, 267 S.W.3d at 23.

*The Homeowner's Policy*

The only named insured under the policy was J.O. Spurlock. The policy provided dwelling coverage (Coverage A) and personal property coverage (Coverage B). The dwelling coverage provided that Beacon covered "the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling." The personal property coverage provided that Beacon covered "personal property owned, worn or used by an **insured** while on the **residence premises**." The coverage for a loss of personal property occurring on the residence premises had a limit of liability of $52,400. Under the policy, Beacon also covered "personal property owned, worn or used by an **insured** anywhere in the world." The coverage for a loss of personal property occurring off the residence premises had a limit of liability of $5,240.

The underlined terms in the policy were defined in the policy. The policy defined "**residence premises**" as "the **residence premises** shown on the declarations page." The "**residence premises**" included "the one or two family dwelling, including other structures, and grounds, where an **insured** resides or intends to reside within 60 days after the effective date of this policy." The residence premises/dwelling shown on the declarations page was identified as Lot 9-10, Block 2, Westwood Hills, which was the legal description of J.O. Spurlock's house and property at 704 Cedar in Mineral Wells. As defined in the policy, the term "**insured**" meant J.O. Spurlock and "residents of [his] household who [were his] relatives; or other persons under the age of 21 and in the care of any person named above."

The policy provided that "[Beacon] insure[d] against physical loss to the property described in Coverage A (Dwelling) and Coverage B (Personal Property)

caused by a peril listed below, unless the loss is excluded in Section I Exclusions." One of the listed perils was "[t]heft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen."

The policy contained various conditions to coverage for the dwelling and personal property. One of the conditions provided as follows:

9. Death. If the named insured dies, we insure:

    a. the named insured's spouse, if a resident of the same household at the time of death.

    b. the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

    c. any person who is an **insured** at the time of such death, while a resident of said premises.

The term "premises," which was used in Sections 9.b. and 9.c., was not a defined term in the policy.

*Analysis of Coverage Issue*

As stated above, the personal property coverage provided that Beacon covered "personal property owned, worn or used by an **insured** while on the **residence premises**." Section 9.b. of the conditions provided that, upon the death of the named insured, Beacon would insure the legal representative of the deceased. However, Section 9.b. also provided that, if the legal representative was not an insured under the policy at the time of the named insured's death, the policy would apply to the legal representative "only with respect to the premises of the original named insured." Unlike the residency requirements set forth in Sections 9.a. and 9.c. for the named insured's spouse and other persons who were

7

insureds at the time of the named insured's death, Section 9.b. did not contain a requirement that the legal representative reside at the premises to obtain coverage under the policy.

Spurlock was not an insured under the policy when J.O. Spurlock died. Therefore, under Section 9.b., the policy applied to Spurlock "only with respect to the premises of the original named insured." The word "premises" is not defined in the policy. Under Spurlock's interpretation of the provision, he contends that, following J.O. Spurlock's death, the policy provided coverage for losses of personal property that occurred on the subject premises at 704 Cedar in Mineral Wells but that the policy did not provide coverage for losses of personal property that occurred off the premises. For the reasons stated below, we conclude that, following J.O. Spurlock's death, the policy did not provide coverage for any loss of personal property. Therefore, we disagree with Spurlock's contention that the policy provided coverage for losses of personal property that occurred on the subject premises.

Because "premises" is not defined in the policy, we must give the term its ordinary and commonly understood meaning. *Tanner*, 289 S.W.3d at 831; *Don's Bldg. Supply*, 267 S.W.3d at 23. The definition of "premises," in relevant part in the Merriam Webster's Collegiate Dictionary, is "a tract of land with the buildings thereon" or "a building or part of a building usu[ally] with its appurtenances (as grounds)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 980 (11th ed. 2004). Similarly, "premises" is defined in relevant part by Black's Law Dictionary as "[a] house or building, along with its grounds." BLACK'S LAW DICTIONARY 1371 (10th ed. 2014). The San Antonio Court of Appeals has stated that, "[u]nder the dictionary definitions of the word 'premises' a tract of land may be intended, as when used in a conveyance, or a building located upon land, as is generally the case in a fire insurance policy." *Associated Indem. Corp. v. Nat'l Sur. Corp.*, 287

S.W.2d 714, 716 (Tex. Civ. App.—San Antonio 1956, no writ). The Beacon policy defines the term "residence premises" in a similar manner. Under the policy, the definition of "residence premises" includes "the one or two family dwelling, including other structures, and grounds where an **insured** resides."

The above dictionary definitions establish that the ordinary meaning of "premises" is a house or building and the grounds upon which the house or building is located. None of the above definitions includes "personal property" in the definition of "premises." Accordingly, we conclude that the plain meaning of "premises" as used in the Beacon policy is unambiguous and does not include personal property. Based on its plain meaning, the undefined term "premises" in the Beacon policy includes J.O. Spurlock's house and the grounds upon which it was located. The Beacon policy insured the legal representative of the named insured only with respect to the "premises" of the original named insured. Given the ordinary meaning of "premises," we conclude that, upon J.O. Spurlock's death, the policy provided dwelling coverage to Spurlock but did not provide personal property coverage to him, whether the loss of personal property occurred on or off the premises.

We find it significant that Section 9.b. of the Beacon policy did not specifically refer to "personal property" of the original named insured. In *Hundley*, the policy provided that, upon the death of the named insured, the insurance company would insure "the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death." *Mun. Mut. Ins. Co. of W. Va. v. Hundley*, 723 S.E.2d 398, 400 (W. Va. 2011). In *Long*, the policy provided that, in the event of the death of the named insured, "the Named Insured shall mean . . . the **legal representative** but only with respect to the **premises** and property of the deceased covered under this policy at the time of such **death**." *Long v. Federated Mut. Ins. Co.*, 431 F.

9

Supp. 473, 474 (W.D. Tenn. 1976). In this case, the parties could have included similar language in Section 9.b. had they intended for the policy to provide coverage for a loss of personal property after the death of J.O. Spurlock. For example, Section 9.b. could have provided that the policy would apply to the legal representative "only with respect to the premises and personal property of the original named insured." The absence of such language supports our conclusion that the policy did not provide coverage to Spurlock for a loss of personal property occurring after J.O. Spurlock died.

The language in Section 9.c. of the Beacon policy also supports the conclusion that the undefined term "premises" does not include personal property. Section 9.c. provides that, if the named insured dies, Beacon will insure "any person who is an **insured** at the time of such death, while a resident of said premises." If the parties intended the undefined term "premises" to include the house and personal property, the use of the word "premises" in Section 9.c. would require the insured to be a resident of J.O. Spurlock's house and his personal property, which would not be possible.

We conclude that the language in the Beacon policy unambiguously provided that, upon J.O. Spurlock's death, the policy did not provide personal property coverage to Spurlock. Therefore, the trial court did not err in granting Beacon a traditional summary judgment on Spurlock's claim that Beacon breached the insurance contract.

Spurlock also alleged a claim against Beacon for violations of the Prompt Payment of Claims Act. *See* TEX. INS. CODE ANN. §§ 542.051–.061 (West 2009 & Supp. 2014). To recover on such a claim, an insured must show that the insurer "is liable for a claim under an insurance policy." *Id.* § 542.060(a). There can be no liability under the Act if the insured's claim is not covered by the policy. *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005).

Because Spurlock's claim for loss of personal property was not covered by the Beacon policy, Spurlock cannot succeed on his claim that Beacon violated the Act. *See id.* Accordingly, the trial court did not err in granting Beacon a traditional summary judgment on Spurlock's claim that Beacon violated the provisions of the Prompt Payment of Claims Act.

The trial court properly granted summary judgment to Beacon on Spurlock's claims against it. Spurlock's first issue is overruled.

*Analysis of Negligent Procurement Issue*

In his second issue, Spurlock contends that, if the Beacon policy did not cover his claim for the theft of personal property that occurred after J.O. Spurlock's death, then Grantham-Adkins was negligent in failing to procure insurance that would have covered the claim. The elements of a negligence claim are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). In Texas, an insurance agent, such as Grantham-Adkins, owes the following common-law duties to a client for whom it undertakes to procure insurance: (1) to use reasonable diligence in attempting to place the requested insurance and (2) to inform the client promptly if unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992); *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 389 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A client's request to an insurance agent for a specific type of insurance gives rise to these duties on the part of the agent. *See Moore v. Whitney-Vaky, Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.).

J.O. Spurlock died on January 26, 2009. Spurlock alleged in his petition that, prior to J.O. Spurlock's death, J.O. Spurlock requested coverage for contents from Grantham-Adkins in connection with his purchase of insurance. Spurlock also alleged that he or his representative notified Grantham-Adkins of J.O.

11

Spurlock's death, that he or his representative requested Grantham-Adkins to continue to provide the coverage provided by the Beacon policy, and that Grantham-Adkins never informed J.O. Spurlock or him that the Beacon policy did not provide coverage for contents upon J.O. Spurlock's death. Spurlock further alleged that, on or about March 12, 2009, he made a claim under the Beacon policy for the damage or loss due to theft or vandalism of personal property that occurred at 704 Cedar in Mineral Wells.

We note that the allegations in Spurlock's petition are not competent summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). Grantham-Adkins presented summary judgment evidence in support of its motion for summary judgment. The evidence included Spurlock's deposition testimony. The evidence showed that Stephanie Lou Cordell was J.O. Spurlock's caretaker and lived with J.O. Spurlock before he died. Cordell claimed that she was J.O. Spurlock's common-law wife and that she owned J.O. Spurlock's house. In April 2009, Spurlock obtained an order from a justice of the peace evicting Cordell from the premises. Spurlock testified that he did not obtain access to J.O. Spurlock's house until after Cordell was evicted. After the eviction, Spurlock entered the house and discovered that contents had been removed from the house. Spurlock believed that Cordell had stolen the property.

Spurlock testified that he and his friend, John Backer, contacted Grantham-Adkins after J.O. Spurlock died. Spurlock believed that he and Backer made two telephone calls to Grantham-Adkins. However, Spurlock did not know when either of the calls occurred. Spurlock said that, during the first call, he and Backer informed Grantham-Adkins that J.O. Spurlock had died and that Spurlock was in the process of being appointed as the administrator of J.O. Spurlock's estate. Spurlock also said that he and Backer requested Grantham-Adkins to renew the

12

Beacon policy and to change the mailing address on the policy. Spurlock testified that, during the second call, he and Backer informed Grantham-Adkins about the theft of personal property from J.O. Spurlock's residence.

Backer stated in correspondence to Spurlock's attorney that "Kelly Spurlock informed the Grantham-Adkins Agency about J.O.'s death and the theft in April 2009." When asked about this statement in his deposition, Spurlock acknowledged that his first contact with Grantham-Adkins following J.O. Spurlock's death may have occurred in April 2009, after Spurlock entered J.O. Spurlock's house and discovered the theft.

Backer's statement constituted summary judgment evidence that Spurlock did not contact Grantham-Adkins until after the loss occurred. During his deposition, Spurlock could only speculate as to when he contacted Grantham-Adkins. Spurlock filed an affidavit in response to Grantham-Adkins's motion for summary judgment. In the affidavit, Spurlock did not provide any additional information as to his contact with Grantham-Adkins. Spurlock did not present summary judgment evidence that he requested any type of insurance coverage from Grantham-Adkins before the loss occurred. Specifically, there was no summary judgment evidence that Spurlock requested Grantham-Adkins to procure insurance to cover a theft of contents from J.O. Spurlock's home. Spurlock neither alleged in his petition nor presented summary judgment evidence that J.O. Spurlock requested coverage from Grantham-Adkins that would have covered a theft of personal property from his residence after his death.

The summary judgment evidence did not raise a fact issue on whether Spurlock requested insurance coverage from Grantham-Adkins before the theft. In the absence of such a request, Grantham-Adkins did not owe a duty to Spurlock to use reasonable diligence to obtain insurance. *See Moore*, 966 S.W.2d at 692. Grantham-Adkins established that there was no genuine issue of material fact on

Spurlock's negligent procurement claim and that it was entitled to judgment as a matter of law. Therefore, we conclude that the trial court did not err by granting summary judgment to Grantham-Adkins. Spurlock's second issue is overruled.

## *This Court's Ruling*

We affirm the orders of the trial court in which it granted the summary judgments.

JOHN M. BAILEY

JUSTICE

January 29, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14