**Opinion filed October 31, 2024**



## In The

# Eleventh Court of Appeals

_____

### No. 11-23-00113-CV

_____

### JOSE MERCADO-ORTIZ, Appellant

### V.

### GEMINI MOTOR TRANSPORT, L.P. AND ERNESTO DOCANDO GUERRA, Appellees

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV55731**

### M E M O R A N D U M   O P I N I O N

A jury awarded Appellant Jose Mercado-Ortiz damages for injuries he sustained when Appellee Ernesto Docando Guerra drove over his leg while operating a truck owned by Appellee Gemini Motor Transport, L.P.[1] However, the

---

[1] During trial, Appellant was referred to as "Mercado" and Appellee Ernesto Docando Guerra was referred to as "Docando." We will also refer to these parties in this way.

jury determined that Mercado and Docando were equally liable for Mercado's injuries. The trial court entered a judgment awarding Mercado $199,815.87 in damages, plus pre and postjudgment interest. In two issues, Mercado argues that we should reverse the trial court's judgment and render a judgment that Docando was 100% liable for Mercado's injuries because: (1) the evidence was legally insufficient to support the jury's proportionate responsibility finding, and (2) the trial court erred by allowing an expert's speculative opinion testimony regarding proportionate responsibility. We affirm.

*Factual and Procedural History*

Mercado sued Docando and Gemini alleging that Docando drove over his leg with an eighteen-wheeler truck driven for Gemini. The matter proceeded to a jury trial, where the following evidence was adduced.

*Testimony of Ernesto Docando Guerra*

Docando testified that he was employed as a driver for Gemini from September 2014 until November 2018. On May 14, 2018, while driving for Gemini, Docando proceeded through a Love's gas station parking lot to make a fuel delivery, when he heard screaming from outside his truck. Docando exited his truck, and the person screaming, later identified as Mercado, informed Docando that he had driven over his foot. Docando explained that he did not see Mercado before running over his leg and denied driving the truck onto the concrete curbing where Mercado was seated. Docando described the area as being shaded by the adjoining wall and that he did not recall seeing Mercado's leg in the drive area.

Docando denied moving his truck after driving over Mercado's foot or creating the black tire marks on the curb, as shown in some of Mercado's exhibits, but agreed that the curb had some black marks along the curbline where the accident happened.

2

The following exhibits provide visual context of the accident. The aerial photograph was included in the record as Defendant's Exhibit No. 2. Mercado was situated on the right side of the foremost protruding corner of the small square structure shown in the lower center of the photograph.[2] Docando's approximate truck route was from the eighteen-wheeler shown at the lower left that then moved forward past the small square structure.[3]



The second image is a street level frame from Plaintiff's Exhibit No. 47, which was a video recreation, taken from the driver's perspective, of the truck's approach to where Mercado was situated. Mercado was positioned where the painted-curb sidewalk meets the brick and cinderblock wall of the square structure on the right side of the image. Docando explained that he did not follow the precise path shown in Plaintiff's Exhibit No. 47; rather, Docando took a wider path so as not to strike

---

[2]On the color photograph, Mercado's location is signaled by the red arrow.

[3]On the color photograph, the direction of the truck's route is signaled by the yellow arrow.

the wall of the square structure, the air pressure measurement device, or the fuel pumps seen in the image.



*Testimony of Jose Miguel Mercado-Ortiz*

Mercado testified that, on May 14, 2018, he had finished transporting a load when he stopped at the Love's gas station to get food and take a shower. Mercado decided to take advantage of the pleasant weather and sat outside on the sidewalk, by the wall, to watch videos, but fell asleep. Mercado explained that he woke up in a lot of pain after Docando's truck's right front tire drove up on the curb and over his leg. Mercado explained that the truck dismounted the curb and his leg when it turned to the left. Mercado told Docando that he had driven over his leg and Mercado alleged that Docando then got back into his truck and moved it to "straighten the truck." Mercado denied that his foot ever extended past the sidewalk while sitting down by the wall. However, Mercado acknowledged that on the day of the accident he had positioned himself next to a pathway that truckers use to fuel

their trucks. Mercado also testified that he did not believe that he bore any responsibility for the accident based on his chosen location.

*Testimony of Tim Leggett*

Tim Leggett is an accident reconstruction engineer Leggett explained that he used software called PC-Crash to input data from the accident to determine that Docando's truck had mounted the curb. As part of Leggett's basis for this conclusion, he considered black tire marks on the edge of the curb that he determined to be the locations that Docando's truck tire had mounted and dismounted the curb which Leggett ascertained "fit perfectly with the . . . mechanism of injury and . . . the location of where [Mercado] was found at the end of the story in the photographs." Leggett further concluded that a "scrub" mark on one of the truck's tires came from the truck's contact with a curb, which was "proof positive that this particular tire came into contact with the curb and left that telltale mark." However, when asked how he could be sure the truck did not obtain the scrub mark some other time, Leggett said "we can't be sure" but that it was consistent with other evidence that it was created at that time. Leggett testified that the right front tire could not have merely come within inches of the curb; rather, "[i]t had to have been up on the curb."

Leggett agreed that he did not know how far onto the sidewalk Docando's truck could have traveled but explained that if it went "too far," Docando's mirror would have struck the wall that Mercado was laying up against. Leggett conceded that Docando's truck could have come to a stop where it did without ever mounting the curb. Leggett further acknowledged that he had not been to the site of the accident, did not inspect the curb for other black tire marks, and stated that he "[could] only see what's in the photographs" provided to him. Leggett also agreed that the marks could have been made without Docando's truck driving onto the curb. Importantly, Leggett admitted that he had no objective evidence that the marks on

5

the curb were left by Docando's truck tires as opposed to those that were previously made by other unrelated vehicles at other times. Further Leggett admitted that there was no objective evidence that the scrub mark on Docando's tire was caused at the time of this accident as opposed to some other event. Leggett did not know the height of the curb, how tall Mercado was, whether he was laying on the sidewalk or up against the wall, or the point of impact beyond the cinder block wall where Docando's truck ran over Mercado's leg. Finally, Leggett agreed that it was an assumption that Docando's truck drove up on the sidewalk.

*Testimony of Stephen Lance Phy*

Stephen Lance Phy is a crash reconstructionist hired by Docando to review the case and provide testimony. Regarding the scrub mark on Docando's tire, Phy explained that "there [was] nothing that tie[d] that mark directly to the curb or this incident." Phy elucidated that "[it] does[not] make much sense to [him]" that the curb was painted red but the scrub mark on the tire was white. Moreover, Phy clarified that the markings on the curb and scrub mark on the tire did not align.

Phy stated that there was no objective evidence to show that Docando's truck mounted the curb. However, Phy concluded that while it was *possible* that Docando's truck mounted the curb, within a six-inch margin of error, it was improbable. Phy countered Leggett's testimony by stating that:

> inconsistencies in the black [tire] marks that [Mercado] rel[ied] upon on the curbline and the uncertainty about the origin of the [scrub mark] on the side of the tire and the very narrow set of circumstance -- very, very narrow range of approach and attack on that curb that a driver would have to make in order to not damage his [truck] and still end up in the position we see the truck at rest.

Phy took the security footage from Love's and a video that Mercado had taken from his cell phone after the accident and then compared them with Mercado's testimony

6

of the sequence of events to conclude that it was not likely that Docando moved the truck after the accident.

Mercado initially objected to Phy testifying to the possibility of Mercado's foot hanging beyond the curb as speculation. However, Mercado did not object when Phy testified that "the hypothesis [was] that . . . Mercado's leg was extended beyond the curb and into the trafficway and was engaged by the truck's tire as the truck came through." Similarly, Mercado failed to object when Phy testified that Mercado was physically tall enough for his leg to hang beyond the curb while laying up against the wall. Mercado again objected to speculation when Phy testified that he believed it was "equally possible" that Docando mounted the curb as it was that Mercado's leg extended beyond the curbline. However, during cross-examination, Phy testified that "[n]either possibility is more likely than the other nor can they be proven to a reasonable degree of accident reconstruction probability," to which Mercado did not object. Phy explained that "the substance of [his] opinions is to determine whether or not there's sufficient evidence to establish which is more likely than the other, did it occur or didn't it occur." Phy again stated that his opinion was "that neither scenario [was] more likely than the other, that they [were] both possible." Phy also conceded that there were no pictures, videos, or testimony explicitly showing Mercado's leg to be hanging over the curb.

*Verdict*

The jury found Docando and Mercado each 50% liable for Mercado's injury and awarded Mercado a total of $399,631.74, which was reduced to $199,815.87 by the trial court due to Mercado's proportionate liability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a) (West 2020). This appeal followed.

*The Evidence Was Legally Sufficient to Support the Judgment*

In his first issue, Mercado argues that the evidence was legally insufficient to support the jury's finding that he was 50% responsible for his injuries.[4] Specifically, Mercado argues that the only evidence that supported comparative negligence was Docando's expert's testimony that it was physically possible for Mercado's leg to be hanging off of the sidewalk, causing Docando to run it over with his truck, which amounts to no evidence at all.

A. *Applicable Law & Standard of Review*

When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. This standard also prevents a reviewing court from substituting its judgment for the jury on matters of credibility. *Id.* at 816–17.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the

---

[4]Although Mercado refers to the jury's finding as "comparative fault," the Texas Legislature has transitioned from the term comparative fault to proportionate responsibility. *See Nabors Well Services, Ltd. v. Romero*, 456 S.W.3d 553, 559 (Tex. 2015).

evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).[5]

The elements of a negligence claim are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Spurlock v. Beacon Lloyds Ins. Co.*, 494 S.W.3d 148, 155 (Tex. App.—Eastland 2015, pet. denied) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). Proportionate responsibility, which replaced the former contributory negligence scheme, applies when an injured person fails to use ordinary care regarding his or her own safety. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 209–10 (Tex. 2015); *see Romero*, 456 S.W.3d at 559 (detailing the evolution of Texas's fault attribution scheme in negligence cases). "Under proportionate responsibility, the fact-finder apportions responsibility according to the relative fault of the actors, thus allowing a plaintiff to recover while reducing that recovery by the percentage for which the plaintiff was at fault." *Romero*, 456 S.W.3d at 559–60 (citing CIV. PRAC. & REM. §§ 33.001, 33.012). Plaintiffs that are not more than 50% responsible for their injuries are entitled to a recovery reduced by their percentage of responsibility. *See id.* at 560 (citing CIV. PRAC. & REM. §§ 33.001, 33.012).

---

[5]Citing *Bos v. Smith*, 556 S.W.3d 293, 299 (Tex. 2018), Appellant argues that we conduct a de novo review when considering whether evidence is legally sufficient. However, *Bos* held that we review a trial court's *legal conclusions* de novo and otherwise tracked the standard of review for legal sufficiency as identified above. *See* 556 S.W.3d at 299–300.

Although contributory negligence no longer applies to bar recovery, "the underlying concepts remain relevant under Texas's proportionate-responsibility statute." *Austin*, 465 S.W.3d at 209–210. "To establish contributory negligence, a defendant must prove (1) the plaintiff was negligent, and (2) the plaintiff's negligence was a proximate cause of his injury." *Kay v. N. Tex. Rod & Custom*, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, no pet.). "[C]ontributory negligence is a plea in confession and avoidance because the defense allows a negligent defendant to defeat the plaintiff's recovery either partially or completely, depending on the percentage of the plaintiff's responsibility." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015); *see Austin*, 465 S.W.3d at 209–10. Thus, "the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite jury findings." *Zorrilla*, 469 S.W.3d at 156.

B. *Analysis*

Mercado argues that the only evidence supporting the jury's finding that he was proportionately responsible for his injuries was Phy's opinion that Mercado was tall enough that his leg could have stretched out past the curb. We disagree for two reasons. First, based on the parties' testimony, there were two mutually exclusive possibilities for the events that led to Mercado's injuries: (1) Docando drove onto the curb and over Mercado's leg, or (2) Mercado's leg was hanging beyond the curb and Docando drove over it without driving onto the curb. *See Burbage*, 447 S.W.3d at 259. While Mercado testified that his leg was not hanging over the curb, Docando testified that he did not drive up on the curb. *See id.*; *City of Keller*, 168 S.W.3d at 807, 822, 827. Thus, the jury was tasked with deciding which version of the events were true. *See City of Keller*, 168 S.W.3d at 807, 822, 827. Mercado's leg hanging over the curb is a reasonable inference the jury could have made if they believed Docando's testimony that he did not drive up on the curb—this inference could have been made without Phy's or any expert's testimony. *See Pilgrim's Pride Corp. v.*

10

*Smoak*, 134 S.W.3d 880, 893 (Tex. App.—Texarkana 2004, pet. denied) (explaining why expert testimony was not required in automobile accident case). The exhibits and testimony presented, including those shown above, provided sufficient evidence for the jury to render the decision that it did without the aid of expert testimony. *See id.* Rendering judgment finding Docando 100% at fault would impermissibly substitute our own judgment for that of the jury. *See City of Keller*, 168 S.W.3d at 822.

Second, Mercado's argument requires that we too presume the only fact upon which a jury could have assessed fault against Mercado was whether his leg was hanging over the curb. However, it is just as possible that the jury determined that Mercado was negligent in falling asleep so close to a path commonly traversed by tractor-trailers behind a wall where he could not be easily seen, and failing to remain aware of his own surroundings. *See Austin*, 465 S.W.3d at 209–10; *City of Keller*, 168 S.W.3d at 807, 822. Indeed, Mercado's own closing argument recognized the possibility of such a conclusion and urged the jury to reject it. Again, we decline to substitute our own judgment for that of the jury. *See City of Keller*, 168 S.W.3d at 822.

Moreover, as addressed in Meracdo's second issue, Phy's testimony was not purely speculative as Mercado argues. Accordingly, Mercado's first issue is overruled.

### *The Trial Court Did Not Err When It Admitted Phy's Testimony*

In his second issue, Mercado argues that the trial court erred by admitting Phy's testimony because it "was impermissibly speculative and unreliable because it was completely divorced from—and directly contradicts—the actual facts in the record." Mercado further argues that the admission of the testimony was harmful "because [Phy's] testimony was the only purported evidence to support the comparative fault finding by the jury."

A. *Applicable Law & Standard of Review*

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702. The expert's testimony must also be relevant, reliable, and based on a reliable foundation. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). "To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Conclusory or speculative opinion testimony is not relevant because it does not tend to make the existence of material facts more or less probable. *Camacho*, 298 S.W.3d at 637; *Coastal Transp. Co. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). Expert opinion that has no factual substantiation in the record is speculative or conclusory. *Beaumont v. Basham*, 205 S.W.3d 608, 621 (Tex. App.—Waco 2006, pet. denied); *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex. App.—Dallas 2005, no pet.). Expert testimony that is based on unreliable data or flawed methodology is unreliable and does not satisfy the relevancy requirement. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010). Unreliable expert testimony is legally no evidence. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).

"[A]lthough expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Coastal Transp. Co.*, 136 S.W.3d at 232 (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). "Opinion testimony that is conclusory or speculative is not relevant evidence,

because it does not tend to make the existence of a material fact more probable or less probable." *Id.* (internal quotation marks omitted).

"We review the trial court's determination regarding the admission of expert testimony under an abuse of discretion standard of review." *Transcon. Realty Invs., Inc. v. Wicks*, 442 S.W.3d 676, 680 (Tex. App.—Dallas 2014, pet. denied). "We reverse a judgment on the basis of evidentiary error—the erroneous admission of an expert's testimony—only if we conclude the error probably caused rendition of an improper judgment." *Id.* at 681. "When expert testimony is involved, courts are to rigorously examine the validity of facts and assumptions on which the testimony is based, as well as the principles, research, and methodology underlying the expert's conclusions and the manner in which the principles and methodology are applied by the expert to reach the conclusions." *XTO Energy Inc. v. Goodwin*, 584 S.W.3d 481, 489 (Tex. App.—Tyler 2017, pet. denied) (citing *Camacho*, 298 S.W.3d at 637). Expert opinion testimony may be unreliable if it is based on assumed facts that vary from the facts in evidence; it may be conclusory if it is based on tests or data that do not support the conclusion reached. *Id.* Each material part of an expert's theory must be reliable for his testimony to be admissible. *Id.* In determining whether expert testimony is reliable, we review an expert's testimony in its entirety. *Abilene Indep. Sch. Dist. v. Marks*, 261 S.W.3d 262, 269 (Tex. App.—Eastland 2008, no pet.).

In *Robinson*, the supreme court identified six factors that trial courts may consider in determining whether expert testimony is reliable: (1) the extent to which the expert's theory has been or can be tested; (2) the extent to which the expert's technique relies upon his own subjective interpretation; (3) whether the expert's theory has been subjected to peer review and publication; (4) the potential rate of error of the theory; (5) whether the expert's theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses

13

that have been made of the expert's theory or technique. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). "The factors in *Robinson* are nonexclusive, and Rule 702 contemplates a flexible inquiry." *Marks*, 261 S.W.3d at 269; *see* TEX. R. EVID. 702. Moreover, in accident reconstruction cases, the *Robinson* factors are "particularly difficult to apply." *Hughes*, 306 S.W.3d at 235. As such, to assess admissibility, "we determine whether there are any significant analytical gaps in the expert's opinion that undermine its reliability." *Id.*

"When a reliability challenge requires the [trial] court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 771 (Tex. App.—Dallas 2007, pet. denied) (citing *Coastal Transp. Co.*, 136 S.W.3d at 233). "The general rule is that error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Rodriguez v. Rangel*, 679 S.W.3d 890, 899 (Tex. App.—San Antonio 2023, pet. denied) (quoting *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004)).

B. *Analysis*

First, we note that Mercado failed to object to certain testimony that is the subject of his complaints on appeal, and that he even solicited the information for cross-examination. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 786 (Tex. 2020); *Rodriguez*, 679 S.W.3d at 899. For example, although Mercado objected to Phy testifying to the possibility that Mercado's foot was hanging past the curb as "pure speculation," he failed to object when Phy testified that Mercado was tall enough for such to occur. Moreover, Mercado subsequently elicited the complained of testimony during cross-examination. Thus, Mercado failed to preserve this complaint for appellate review. *See Pike*, 610 S.W.3d at 786; *Rodriguez*, 679

14

S.W.3d at 899. Nevertheless, even if Mercado had preserved this complaint for our review, we are not persuaded that the testimony was inadmissible.

Phy's testimony is not a mere *ipse dixit* as Mercado suggests. Phy explained that he based his opinions on witness testimony and evidence gathered from the scene of the accident and that he ran a computer model to test each hypothesis. *See Hughes*, 306 S.W.3d at 235; *Robinson*, 923 S.W.2d at 557; *see also Bustamante v. Ponte*, 529 S.W.3d 447, 465 (Tex. 2017) (noting that while experts' testimony "could have been better," it was not impermissibly speculative where they "tied their conclusions to the facts," their experience, and observations). Mercado claims that Phy assumed facts that varied materially from the actual, undisputed facts; however, Phy did not appear to assume anything. Phy did not opine that Mercado's feet were in fact hanging over the curb, rather, he testified that Mercado was tall enough for his feet to hang over the curb using physical measurements. Indeed, on cross-examination, Phy conceded that there was no testimonial or other evidence that Mercado's foot hung over the curb. Importantly, the primary substance of Phy's testimony was to dispute the bases of Leggett's conclusion that the truck's tire "had to have been on the curb," explaining that neither scenario was more likely than the other. After reviewing Phy's testimony, as a whole, we conclude that there were not any significant analytical gaps that would undermine its reliability, making it inadmissible. *See Hughes*, 306 S.W.3d at 235.

Finally, we are unable to conclude that the admission of Phy's testimony, even if erroneous, probably caused the rendition of an improper judgment. *See Wicks*, 442 S.W.3d at 681. As discussed in Mercado's first issue, the jury could have concluded that Mercado was negligent based on facts that are unrelated to his complaints about Phy's testimony. *See id.* Moreover, as noted, the issue of whether or not Docando drove up on the curb and ran over Mercado's foot was disputed by the parties and presented to the jury for their decision. *See City of Keller*, 168

15

S.W.3d at 822. As such, the jury could have found Docando—not Mercado—to be credible and concluded that he did not drive onto the curb. *See id.* The jury is not required to leave their common sense at home. *See Guevara v. Ferrer*, 247 S.W.3d 662, 666 (Tex.2007) (submission of causation issue to a jury is warranted when, under the evidence, layperson's "general experience and common sense" will enable a layperson "to determine, with reasonable probability, the causal relationship between the event and the condition"). Without having driven onto the curb, the jury was free to disbelieve Mercado's testimony that while he was sleeping, his feet had not extended beyond the curb. That would be consistent with Phy's computer modeling of the pathway of Docando's truck not colliding with the curb and the video evidence presented that, contrary to the testimony of Mercado, the truck was not moved by Docando postaccident. Accordingly, Mercado's second issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

October 31, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.