# Supreme Court of Texas

No. 23-0493

Werner Enterprises, Inc. and Shiraz A. Ali,

*Petitioners*,

v.

Jennifer Blake, individually and as next friend for Nathan Blake, and as heir of the estate of Zackery Blake, deceased; and Eldridge Moak, in his capacity as guardian of the estate of Brianna Blake,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE BLAND, joined by Justice Boyd and Justice Huddle, dissenting in part.

A driver exercising ordinary care under ordinary conditions cannot be held responsible when another driver loses control on an interstate highway, crosses the median, and causes a collision—all in a matter of seconds. In such circumstances, as the Court holds, the other driver's loss of control is unforeseeable as a matter of law. A driver unable to avoid the head-on collision in such circumstances is not a substantial factor in contributing to the injuries that result from it.

This accident, however, arose during driving conditions that were far from ordinary. The jury heard evidence that the highway was a sheet of ice. The Werner Enterprises driver, Shiraz Ali, had passed no fewer than three highway accidents on the road to this one. With those accidents, and with abundant evidence that ice causes drivers to skid, a reasonable jury could conclude that a Texas driver exercising ordinary care should know that ice presents an increased risk of highway drivers losing control. As a result, the jury heard, reasonably prudent drivers should reduce their speed in icy conditions, for two reasons. First, reduced speed decreases the chance of the driver's losing control. Second, reduced speed may decrease the severity of injuries in a collision caused when *another* driver loses control. The evidence in this case included a similar accident, not long before this one, in which the reduced speed of a truck driver left no one injured after a cross-median collision on this highway.

Because the record contains some evidence that Ali's excessive speed under the circumstances was a contributing cause of the severity of the Blakes' injuries, the trial court did not err in permitting the jury to decide whether the Blakes had proved that Ali was negligent in the circumstances presented, whether such negligence was a contributing cause of the Blakes' injuries, and if so, what proportionate responsibility, if any, Ali (and Werner, through Ali) should bear.

Nevertheless, I agree with the Court that the trial court erred in rendering this judgment on the jury's verdict. While the evidence might support *some* proportionate responsibility against Ali—attributable to excessive speed at the time of the collision—no reasonable juror could

2

conclude that Ali was *more* responsible for the Blakes' injuries than the driver who lost control in the first place. And while the Blakes alternatively suggest that we render judgment on a comparative fault question limited to Ali and the other driver, in which the jury placed slightly more responsibility for the Blakes' injuries on the other driver, that question, like all the liability questions in this charge, did not adhere to our well-settled pattern jury charge for traffic accidents.

Instead, guided by faulty instructions, having heard evidence and argument about liability theories against trucking companies not recognized in Texas jurisprudence, and having been presented with novel causation theories—like that Ali should not have been driving that day *at all*—the jury was misled into placing disproportionate responsibility for the Blakes' injuries on Ali and Werner. I therefore join the Court in reversing the trial court's judgment.

For the reasons stated by the dissenting justices in the court of appeals and those discussed by Justice Young in his concurrence, this trial was rife with legal error. However, because some evidence would permit a reasonable jury to conclude that Ali bore some proportionate responsibility for contributing to the Blakes' injuries, I would remand the case for a new trial. As the Court renders judgment for Werner and Ali instead, I join in its reversal of the trial court's judgment but respectfully dissent from its disposition.

**I**

The Blakes introduced legally sufficient evidence that Ali's conduct was a proximate cause of the Blakes' injuries. The trial court instructed the jury:

3

"Proximate cause" . . . means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that [an actor] using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.[1]

Proximate cause has two elements: cause-in-fact and foreseeability.[2] Cause-in-fact requires proof that, absent a defendant's alleged negligence, the injury would not have occurred, and that such negligence was "a substantial factor in causing the injury."[3] Foreseeability, in turn, requires proof beyond "[c]onjecture, guess, and speculation" that a person of ordinary prudence should anticipate the danger created by the alleged negligence.[4] Foreseeability "does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation."[5] There may be more than one proximate cause of an injury, and all persons "whose negligent

---

[1] This instruction matches the definition of proximate cause in the Texas Pattern Jury Charge. *See* State Bar of Tex., Tex. Pattern Jury Charges PJC 2.4 (2018).

[2] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

[3] *Gunn*, 554 S.W.3d at 658.

[4] *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016).

[5] *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (plurality op.); *see Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable.").

conduct contributes to the injury, proximately causing the injury, are liable."[6]

## A

The Court concludes as a matter of law that Ali's speed was not a substantial factor in contributing to the Blakes' injuries. Substantial-factor causation permits courts to exclude but-for causes that are too attenuated from the injuries to justify liability, as the defendant's conduct merely sets the condition or scene for the harm to occur.[7]

We have recognized that but-for causation can be too attenuated as a matter of law. In *Lear Siegler, Inc. v. Perez*, a highway department employee pulling a flashing arrow sign stopped his truck on the side of the highway.[8] Another driver fell asleep at the wheel and crashed into the sign, killing the employee.[9] The employee's survivors sued the sign manufacturer, alleging that the employee stopped because the sign had malfunctioned, thereby placing him in the zone of danger posed by the sleeping driver.[10] We upheld summary judgment for the sign manufacturer because the sign's malfunction was too attenuated from the collision to be a legal cause. "If [the employee] had instead taken the

---

[6] *Travis*, 830 S.W.2d at 98.

[7] *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991); *see also Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995).

[8] 819 S.W.2d at 471.

[9] *Id.*

[10] *Id.*

5

sign back to the highway department office where the roof caved in on him, we likewise would not regard it as a legal cause."[11]

In *Union Pump Co. v. Allbritton*, a pump caught fire at a chemical plant.[12] After the fire was extinguished, a plant employee slipped on a slick overground pipe rack.[13] The pipe rack was slick due to the liquid used to extinguish the pump fire.[14] The employee sued Union Pump, alleging that its defective pump caused her injuries.[15] Our Court disagreed, holding that "the pump fire did no more than create the condition that made [the employee's] injuries possible."[16] "Even if the pump fire were in some sense a 'philosophic' or 'but for' cause," the fire had been extinguished, the forces at hand had come to rest, and the employee was walking away from the scene.[17] The connection between the pump malfunction and the employee's later injury from a slip and fall was too remote for the malfunction to be a legal cause.[18]

Whether speed is a proximate cause of an injury "depends upon the facts."[19] As discussed further below in the context of foreseeability, the jury heard evidence that a reasonably prudent person would have

---

[11] *Id.* at 472.

[12] 898 S.W.2d at 774.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 776.

[17] *Id.*

[18] *Id.*

[19] *Baumler v. Hazelwood*, 347 S.W.2d 560, 565 (Tex. 1961).

reduced his speed to no more than 15 miles per hour at the time of the accident to account for the icy conditions that day. The Blakes' expert testified that, when Ali saw Salinas enter the median, Ali was traveling 50.5 miles per hour. Ali reacted within a half second, taking his foot off the gas and moving it toward the brake. It took Salinas just over two seconds to cross the 42-foot median. By the time Salinas was across, Ali had slowed to approximately 45 miles per hour. Werner's own expert testified that, had Ali been going 15 miles per hour, his truck would have come to a stop "before the crash happen[ed]." The jury also heard evidence presented from a similar incident that day in which a driver lost control, crossed the center median, and struck an 18-wheeler going about 5 miles per hour at the time. The similar collision resulted in no injury to the oncoming driver. This is some evidence from which a jury could reasonably conclude that Ali's speed at the time of the collision was a substantial factor in determining the severity of the injuries the Blakes suffered.

Because Ali's speed was a concurrent cause of the collision, equating the present facts with *Lear Siegler* and *Union Pump* is error. Each of those cases dealt with disconnected instances of negligence, not concurrent negligence. The malfunctioning sign in *Lear Siegler* had no effect on the highway employee's injuries; it merely furnished the condition that placed the driver on the roadside. Likewise, the malfunctioning pump in *Union Pump* had nothing to do with the employee's injuries resulting from slipping on a slick surface. In contrast, Ali's speed was concurrent with Salinas's negligent loss of control, not disconnected from it. In these circumstances, where two

7

vehicles on icy roads crash, excessive speed is not too attenuated to be a legal cause if some evidence supports the conclusion that speed contributed to the injuries sustained.

The evidence of causation presented in this case is more substantial that that presented in *Creel v. Loy*, a federal District of Montana case that the Court cites.[20] In that case, like this one, the plaintiff was a passenger in a vehicle that lost control, crossed a median, and collided with a commercial truck alleged to be traveling too fast for the road conditions.[21] The plaintiff's expert testified that a threefold increase in speed results in a ninefold increase in impact, but the court held that this testimony was untethered to the facts in the record.[22] The Blakes, in contrast, put on some evidence showing that a change in Ali's speed "would have altered the outcome": namely, Werner's own expert's conclusion. From this evidence, a reasonable jury could conclude Ali's speed was a substantial factor in the Blakes' injuries.

Suppose the collision had happened the same way, but Salinas and the Blakes suffered no injury while Ali was badly hurt. In the trial of Ali, plaintiff, versus Salinas, defendant, Salinas would insist on—and receive—a contributory negligence question permitting the jury to consider whether Ali's speed contributed to Ali's injury because some evidence—like the results of a comparable collision that did not involve

---

[20] *Ante* at 23–24; 524 F. Supp. 3d 1090, 1099–1100 (D. Mont. 2021).

[21] *Id.* at 1093.

[22] *Id.* at 1099–100 ("Ultimately, Plaintiff fails to present any evidence that shows a change in [the defendant's] speed or operation of the truck would have altered the outcome.").

negligent speeding—supported a conclusion that the speed contributed to the severity of Ali's injury. Similarly, although the causation evidence in this case was rigorously contested, the record fails to establish as a matter of law that Ali's negligence did not contribute to the Blakes' injuries.

**B**

Foreseeability, like substantial-factor causation, is a fact-intensive exercise.[23] Under this "practical test," we ask "what one should under the circumstances reasonably anticipate as consequences of his conduct."[24] The question here is whether a driver of ordinary prudence, who had driven past multiple wrecks in icy conditions, knew or should have known that excessive speed might exacerbate injuries to passengers in a vehicle that loses control.

Generally, the defendant must anticipate the consequences of his actions as to the plaintiff or one similarly situated to the plaintiff. In *Houston Lighting & Power Co. v. Brooks*, the entity operating powerlines knew its lines ran adjacent to a floor of a newly constructed

---

[23] *See Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) (explaining that considerations of whether to impose a new duty involve the application of social, economic, and political questions, including the foreseeability and likelihood of injury, to the particular facts at hand); *Greater Hous. Transp. Co. v. Philips*, 801 S.W.2d 523, 526–27 (Tex. 1990) (examining the record to conclude that the injury was not foreseeable); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999) (plurality op) (same); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 550–51 (Tex. 1985) (examining the record to conclude that a material fact question exists on foreseeability).

[24] *Hous. Lighting & Power Co. v. Brooks*, 336 S.W.2d 603, 607 (Tex. 1960) (quoting *City of Dallas v. Maxwell*, 248 S.W. 667, 670 (Tex. Comm'n App. 1923 holding approved, judgm't adopted)).

building and knew that construction was ongoing but, we held, could not have foreseen that the plaintiff would bring a fifteen-foot metal-handled mop in the vicinity of the lines from an adjacent building.[25] Unlike a premises owner with power lines presenting an attenuated and inactive danger, Ali's speed was a concurrent cause of the collision. Road collisions due to icy conditions are foreseeable to highway drivers. In *Lofton v. Texas Brine Corp.*, our Court held that a driver speeding in fog could foresee that his speed would prevent him from avoiding an object in a roadway.[26] "The particular manner in which the object ([plaintiff]'s pickup) got in the roadway need not be foreseeable in this impaired visibility situation."[27]

We similarly held that a car crossing the center line was foreseeable in *Biggers v. Continental Bus Systems, Inc.*[28] I agree with the Court that Ali's crossing a divided interstate highway is far different from the facts found to be foreseeable in *Biggers*, which involved a 24-foot-wide two-lane road.[29] And I agree that, as we later said in *Bell v. Campbell*, factual distinctions between motor vehicle accident cases can dictate different conclusions.[30] In *Bell*, Campbell's truck was struck by a vehicle pulling a trailer.[31] The force of the crash caused the trailer

---

[25] *Id.* at 605–06.

[26] 777 S.W.2d 384, 387 (Tex. 1989).

[27] *Id.*

[28] *See* 303 S.W.2d 359, 363–64 (Tex. 1957).

[29] *Ante* at 21.

[30] 434 S.W.2d 117, 122 (Tex. 1968).

[31] *Id.* at 118.

to disengage and overturn on the highway.[32] When three persons, including Bell, attempted to move the trailer off the road, the trailer was struck by an oncoming car.[33] We held that the drivers in the first crash "could not reasonably foresee that the manner in which they operated their vehicles prior to the first collision might lead to the serious injury or deaths of persons not even in the zone of danger as a result of their being struck by another automobile which was some distance away at the time."[34]

This accident is factually distinct from both *Biggers* and *Bell*. The Blakes adduced evidence that their injuries were of a character reasonably foreseeable to ordinary drivers under icy conditions and that Ali in particular, given the conditions at the time, could have foreseen an increased risk of loss of control by other drivers as well as the potential that excessive speed under the conditions could exacerbate injuries resulting from a collision. Testimony from first responders confirmed that, on their way to the accident, they had to drive "slower than usual" because "the roads were so icy." Ice had built up on both sides of the highway. They estimated that "10 to 15 miles an hour" was the fastest they could safely go, as they "didn't want to hit another car because we were slipping pretty bad . . . [b]ecause of the icy conditions."

One expert testified as to the applicability to commercial truck drivers of "safety rules and the state [Commercial Drivers License] manual," which include rules regarding dealing with ice. These rules are

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 121.

11

"not only about losing control" but have "to do with those speeds involved." Because "[h]igh speeds greatly increase the severity of crashes," the trucking industry standard is to reduce speed to between "10 to 15 miles an hour or slower . . . to a speed that you can control and gives you time to do the right thing at the right time and if the worst thing happens, when you have an accident, it won't be bad."

Werner's training included a rule requiring drivers, upon encountering icy conditions, to "slow to a crawl, which is 10 or 15 miles an hour or less" and to "stop driving as soon as you can safely do so." Ali was further trained that the reason 18-wheelers must slow down on icy roads "is not because the 18-wheelers are more likely to lose control but because *all* vehicles are more likely to lose control and . . . we know what the consequences are if a passenger vehicle loses control on ice in front of a 30- or 40-ton 18-wheeler going highway speeds."[35]

This evidence was contested, and reasonable jurors could conclude that Ali's speed was *not* a proximate cause of the Blakes' injuries. Such evidence is sufficient, however, to raise a fact issue on the foreseeability of speed as a contributing proximate cause. It is "only the general danger [that] need be foreseeable, not the exact sequence of events that produced the harm."[36] A general danger on an icy highway is a heightened risk that drivers will lose control.[37]

---

[35] Emphasis added.

[36] *Lofton*, 777 S.W.2d at 387.

[37] The Court notes the rarity of appellate cases like this one. *Ante* at 24. Such rarity just as easily shows that juror evaluation of proportionate

**C**

The Court assumes there is sufficient evidence to conclude that Ali's speed "was negligent under these weather conditions."[38] The Blakes introduced evidence that Ali's excessive speed contributed to or exacerbated the Blakes' injuries by hitting them at 40 miles per hour rather than at a slower speed. The question the jury faced was whether a driver who maintained a prudent speed, given the same reaction time, would have slowed and lessened the injuries sustained in the accident.

The jury heard conflicting evidence about whether Ali's speed was a cause of the Blakes' injuries. Werner argues that the collision happened in an instant—far too short a time for anything Ali did to have contributed to the accident or to the Blakes' injuries. In its view of the evidence, the reaction time was such that Ali's speed made no difference whatsoever, a view the Court adopts as a matter of law. In some instances, such a conclusion is undisputedly true. For example, had Salinas hit the side of Ali's truck, then Ali's speed would be, as the Court observes, merely a condition of the accident but not a cause of it or relevant to exacerbating the harm. In contrast, had Ali been many lengths behind Salinas's truck, with plenty of opportunity to slow or stop, and had Salinas's truck been at rest in Ali's lane, then the Court likely would not disagree that Ali's excessive speed could be a contributing cause of the Blakes' injuries.

---

responsibility for concurrent causes of injuries from traffic accidents is not often a disputed legal concept.

[38] *Ante* at 14.

The evidence about this accident is somewhere in between. Ali slowed, and he exercised care in slowing, but he could not stop, the Blakes argue, because he was going too fast for the icy conditions—faster than a reasonably prudent driver. The Blakes argue that a reasonably prudent driver would have been going no faster than 15 miles per hour, a speed at which Werner's own expert agreed a driver would have been able to stop in time to avoid the collision.

Because some evidence exists from which a jury reasonably could conclude that Ali's excessive speed had "an effect in producing the harm" that brought about the injuries to the Blakes, the trial court did not err in submitting Ali's negligence to the jury for a determination of negligence and proximate cause.[39]

## II

The Texas statue governing proportionate responsibility requires a factfinder to evaluate the conduct of any party who causes or contributes to cause injury to the plaintiffs "in any way":

> The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's *causing or contributing to cause in any way* the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these: (1) each claimant; (2) each defendant; (3) each settling person; and (4) each

---

[39] *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770 (Tex. 2007); *see also Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 562–63 (Tex. 2015).

responsible third party who has been designated under Section 33.004.[40]

In *Dugger v. Arredondo,* we made clear that "the language of [Section 33.003(a)] indicates the Legislature's desire to compare responsibilities for injuries."[41] And later, in *Nabors Well Services, Ltd. v. Romero,* we held that the term "in any way" is expansive and can mean "only what it says—there are no restrictions on assigning responsibility to a plaintiff as long as it can be shown the plaintiff's conduct 'caused or contributed to cause' his personal injury or death."[42]

In *Nabors,* a transport truck clipped a suburban, causing the suburban to career off the highway and roll multiple times.[43] Some evidence suggested that only one of the suburban's occupants wore a seat belt. In a suit against the transport trucking company, the trial court disallowed evidence of the injured occupants' failure to wear seat belts, and the court of appeals affirmed.[44]

Our Court reversed, holding that the proportionate responsibility statute "casts a wide net" over conduct that contributes "in any way" to the injuries claimed.[45] We held that the proportionate responsibility statute calls for an apportionment of negligent conduct that causes the

---

[40] Tex. Civ. Prac. & Rem. Code § 33.003(a) (emphasis added).

[41] 408 S.W.3d 825, 832 (Tex. 2013).

[42] 456 S.W.3d at 562.

[43] *Id.* at 555.

[44] *Id.* at 555–56.

[45] *Id.* at 560.

claimed *injuries*, not the *occurrence*.[46] Thus, factfinders must "consider relevant evidence of a plaintiff's pre-occurrence, injury-causing conduct."[47] Although the failure to wear seat belts was not the immediate cause of the collision, a jury could conclude that the failure was a substantial factor in bringing about the plaintiffs' injuries.[48]

Evidence showing that a party's negligence has "an effect in producing the harm," that is, an effect "in bringing about" or exacerbating the plaintiff's injuries, is evidence of proximate cause.[49] "The idea of responsibility" that lurks in proximate cause is responsibility for the root and *the extent* of the injuries claimed.[50] Legally sufficient evidence that a party's negligence caused or contributed to the plaintiff's injuries permits the factfinder to weigh that evidence, determine whether it meets the applicable burden of proof, and assess which negligent parties bear any responsibility in comparison to other negligent parties or responsible third parties.[51]

---

[46] *Id.* at 562–63.

[47] *Id.* at 563.

[48] *See id.* at 562–63 ("The sharpest rhetorical argument against admitting seat-belt evidence has been that failure to use a seat belt cannot *cause* an accident, and it is those who cause accidents who should pay. But it is equally true that failure to use a seat belt will sometimes exacerbate a plaintiff's injuries or lead to his death. Accordingly, the conclusion is unavoidable that failure to use a seat belt is one way in which a plaintiff can 'cause[] or contribut[e] to cause in any way' his own 'personal injuries' or 'death.'" (quoting Tex. Civ. Prac. & Rem. Code § 33.003(a))).

[49] *Borg-Warner Corp.*, 232 S.W.3d at 770.

[50] *Id.*

[51] *In re E. Tex. Med. Ctr. Athens*, 712 S.W.3d 88, 91 (Tex. 2025).

16

Under our existing precedent and the statutory framework for proportionate responsibility, a jury must consider sufficiently supported evidence of a person's causing or contributing to cause the harm at issue, "whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these."[52] With legally sufficient evidence that Ali's excessive speed contributed to the Blakes' injuries, the trial court properly submitted Ali's negligence to the jury.

## III

Werner argues, as an alternative ground for rendering judgment, that Ali owed no duty to the Blakes. All negligence actions require the existence of a legal duty owed by one person to another.[53] Werner does not challenge the existence of the duty drivers generally owe to "observe in a careful and intelligent manner the traffic" and operate their vehicles in a reasonable manner.[54] Werner instead argues that Ali had no duty to anticipate Salinas's negligent conduct or to mitigate the dangers of ice and snow.

Determining the parameters of a legal duty is a question of law.[55] Part of the duty to operate a vehicle in a reasonable manner is to manage

---

[52] Tex. Civ. Prac. & Rem. Code § 33.003(a).

[53] *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

[54] *Lynch v. Ricketts*, 314 S.W.2d 273, 275 (Tex. 1958).

[55] *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017); *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002).

one's speed to fit the road conditions at hand. The Transportation Code commands drivers not to drive "at a speed greater than is reasonable and prudent under the circumstances then existing."[56] Drivers expressly must reduce speed if "a special hazard exists with regard to . . . weather or highway conditions."[57] The duty to drive appropriately for the conditions has been widely recognized.[58] "Although not required to anticipate negligent or unlawful conduct on the part of others, [a driver is] not entitled to close her eyes to that which [is] plainly visible and

---

[56] Tex. Transp. Code § 545.351(a). The statutory admonition to slow one's vehicle due to weather conditions is some evidence of the applicable standard of care.

[57] *Id.* § 545.351(c)(5).

[58] *See Golleher v. Herrera*, 651 S.W.2d 329, 333 (Tex. App.—Amarillo 1983, no writ) ("In exercising ordinary care for her own safety, [the driver] was obligated to operate her automobile at a rate of speed no greater than an ordinarily prudent person would operate a vehicle under the same or similar circumstances."); *Hokr v. Burgett*, 489 S.W.2d 928, 930 (Tex. App.—Fort Worth 1973, no writ) ("Although a motorist may not be exceeding the speed limit, he is under a duty to drive no faster than a person of ordinary prudence under the same or similar circumstances."); *Fitzgerald v. Russ Mitchell Constructors, Inc.*, 423 S.W.2d 189, 191 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (noting the driver was under a "common law duty to operate her vehicle at a speed at which an ordinarily prudent person would operate a vehicle under the same or similar circumstances."); *Billingsley v. S. Pac. Co.*, 400 S.W.2d 789, 794 (Tex. App.—Tyler 1966, writ ref'd n.r.e.) ("Although a motorist may not be exceeding the 'legally posted speed limit,' nevertheless, he is under the duty to drive no faster than an ordinarily prudent person in the exercise of ordinary care would drive under the same or similar circumstances."); *Meinen v. Mercer*, 390 S.W.2d 36, 40 (Tex. App.—Corpus Christi–Edinburg 1965, writ ref'd n.r.e.) ("The driver of an automobile should exercise, in operating the vehicle, a degree of care that is commensurate with existing road conditions, so as to keep the vehicle under control on a slippery street or road and not cause injury to another vehicle by skidding into it." (quoting 7 Tex. Jur. 2d *Automobiles (Effect of Road Condition)* § 90)).

which would have been observed by a person of ordinary prudence similarly situated."[59]

Werner argues that property owners do not owe a duty to clear ice from their land and that motor vehicle operators are even less suited to "provide for the safety of the broad area adjacent to where they traverse."[60] That much may be true, but the duties for a premises owner and a driver are different. Slowing down due to icy conditions as an exercise of ordinary care while driving is an existing rule of the road. A driver's duty is not to make the roadway safe, but to avoid increasing the hazard to those around him.[61] A duty to slow down in icy conditions is not the same as the novel duty that Werner suggests; drivers need not clear ice nor make the roadway safe. The jury heard evidence that the icy conditions and the need to proceed slowly were abundantly apparent to drivers on the road that day. Ali's duty to those in the zone of danger around him was to reduce his speed commensurate with the hazard posed by the conditions at hand.[62] The jury, of course, was free to reject

---

[59] *Lynch*, 314 S.W.2d at 275.

[60] Pet. Br. at 25 (citing *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 414 (Tex. 2015)).

[61] *See C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966) (holding that the jury could have inferred that "a reasonably prudent person exercising ordinary care for his own safety and the safety of others using the highway would have looked to the west before driving from the shoulder into the traffic lanes").

[62] *See, e.g.*, *Parrott v. Garcia*, 436 S.W.2d 897, 900–01 (Tex. 1969) (explaining that the zone of danger in a drag race "would include the area of the two-lane highway to be raced upon, and at least that additional portion of the highway which would be required to stop the cars upon completion of the race").

the Blakes' evidence and conclude that the Blakes were outside Ali's zone of danger until it was too late.

## IV

Though I do not join the Court in rendering judgment for Ali and Werner, I agree with the Court that the judgment for the Blakes must be reversed.

For the reasons discussed by the dissenting justices in the court of appeals and Justice Young in his concurring opinion, the trial court erred in submitting expanded theories of liability against Werner. Once an employer has accepted responsibility for the actions of its employee, other negligent actions by the employer culminating in the employee's negligence should not be submitted to the jury as independent theories of ordinary negligence. The Blakes point to no case in which our Court has upheld a verdict in such circumstances. When Werner accepted that Ali was acting within the course and scope of his employment at the time of the collision, Werner and Ali ceased to have independent legal significance from each other for the purposes of evaluating Ali's negligence. Instructing the jury in a manner that separated Werner from Ali and arguing that these were independent causes of the Blakes' injuries was error.

Error in a jury charge does not require reversal unless the error probably caused the rendition of an improper judgment or probably prevented the appealing party from presenting its case.[63] The effect of the erroneous charge here is obvious: when permitted to consider

---

[63] *Horton v. Kan. City S. Ry. Co.*, 692 S.W.3d 112, 137–38 (Tex. 2024).

Werner's negligence apart from Ali's negligence, the jury determined that Werner and Ali collectively bore 84% of the responsibility for the Blakes' injuries. The jury assigned Salinas—the driver who lost control of his vehicle and veered across the median—only 14%. This upside-down apportionment is strikingly flawed. Why did it happen? The jury heard about numerous acts of negligence far attenuated from Ali's driving at the time of the collision. Submitting Werner separately permitted the jury to find responsibility for negligence that, standing alone, could never be a legal cause of the collision.

The Blakes argue, in the alternative, that the Court should render judgment on an apportionment question that omitted Werner as a liable party separate from Ali. However, this liability question deviated from the Pattern Jury Charge by directing the jury to consider Ali's negligence "on December 30, 2014," nudging the jury to consider acts of negligence over the course of a day far too attenuated from the collision to contribute to the Blakes' injuries.[64] It was the collision that caused the injuries, not some attenuated negligence. The question permitted the Blakes to obtain heightened proportionate responsibility based on conduct that was not a legal cause of their injuries from the collision.

Further, the inclusion in the trial of the concept that Werner was liable "directly" or independently from Ali's conduct infected the jury charge overall, clouding the issues the jury was to decide with

_____

[64] *See* State Bar of Tex., Tex. Pattern Jury Charges PJC 4.1 (2018) (charging the jury to answer only whether the negligence of certain parties proximately caused the injury or occurrence in question).

unspecified or invalid legal duties. The submission of erroneous questions can muddle consideration of a legitimate question by shifting a jury's focus or by permitting the submission of prejudicial evidence relevant only to the improper question.[65] Because the trial court's instructions to the jury were faulty both overall and with respect to each liability question, no legally grounded alternative judgment favors the Blakes. A new trial is the proper remedy when faulty jury instructions have caused harmful error.[66]

*　　*　　*

The jury heard some evidence that Ali was traveling at an excessive speed for the icy conditions at the time of the collision and that this excessive speed contributed to the severity of the Blakes' injuries. Because the record reflects some legally sufficient evidence of causation, the jury was entitled to consider and weigh the conflicting evidence to determine (1) whether Ali's negligence was a proximate cause of the Blakes' injuries and (2) if so, what proportionate responsibility, if any, Ali (and Werner, through Ali) should bear.[67]

However, the trial court harmfully erred in its instructions to the jury by submitting Werner as an independently liable party and by directing the jury to focus on conduct other than negligence that was a

---

[65] *See In re Est. of Poe*, 648 S.W.3d 277, 291–92 (Tex. 2022) (remanding for new trial where three of four questions submitted related to an improper theory of liability and the fourth question included a superfluous instruction).

[66] *Id.* at 291 ("[T]he submission of an erroneous question can be harmful if it confuses or misleads the jury in answering a question that is properly submitted and material to the judgment.").

[67] Tex. Civ. Prac. & Rem. Code § 33.003(a).

proximate cause of the injuries in question. Accordingly, I join the Court in reversing the trial court's judgment for the Blakes. I respectfully dissent from the Court's rendering judgment for Werner. We instead should remand the case for a new trial.

Jane N. Bland
Justice

**OPINION FILED:** June 27, 2025